**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Leonard Orozco BUENROSTRO,
Defendant–Appellant.**

No. 88–2490
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 8, 1989.
Rehearing and Rehearing En Banc
Denied April 19, 1989.

---

**15.** *See, e.g.,* McCormick On Evidence § 54 (3rd ed.).

J. Gary Trichter (Court-appointed), W. Troy McKinney, Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Houston, Tex., Henry K. Oncken, U.S. Atty., Corpus Christi, Tex., for plaintiff-appellee.

Before GEE, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Leonard Orozco Buenrostro pled guilty to possession of 18 kilograms of heroin with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). On appeal, he challenges only his sentence. He contends that the district court incorrectly applied the sentencing guidelines, *see* 18 U.S.C. § 3553(a), by denying his request for a reduction in offense level on the ground that he was a "minimal participant." Guideline 3B1.2. He also contends that the district court should have made a downward departure from the guideline sentence pursuant to § 5K2.0. Because we find that the district court correctly applied the guidelines to factual findings which were not clearly erroneous, and because the court's refusal to depart from the guideline range was not in violation of law, we affirm.

I

According to Buenrostro's own admissions at his sentencing hearing, the United States border patrol apprehended him with 18 kilograms of heroin in December 1987. Buenrostro, accompanied by his wife and children, was crossing into the United States from Mexico. He was driving a 1984 Granada, which he owned. The border agent found evidence of tampering with some panels in the car, and, after using a "sniffer dog," eventually discovered the 18 kilograms of heroin. The drug has a value of approximately three million dollars.

At the time he was apprehended, Buenrostro denied any knowledge of the contraband. Buenrostro speculated that the parcels of heroin might have been inserted into the car by some mechanics who had recently done body work on the vehicle. Later, however, Buenrostro admitted that he knew that the car contained a controlled substance, but maintained that he believed the substance to be marijuana, rather than heroin. Buenrostro pled guilty to possession of a controlled substance with intent to distribute. The government agreed to deem Buenrostro's admission an "acceptance of responsibility" pursuant to Guideline 3E1.1, and to recommend that Buenrostro receive a sentence at the bottom of the applicable guideline range.

Buenrostro received the agreed upon two-point reduction to his offense level for "acceptance of responsibility." The resulting offense level was 34, and, combined with a Criminal History Category of I, resulted in a sentencing range of 151 to 188 months. The district judge eventually imposed a 151 month sentence, the minimum sentence within the applicable range.

At the sentencing hearing, and again on appeal, Buenrostro contended that his offense level should have been further reduced pursuant to Guideline 3B1.2(a), allowing a four-point reduction if the defendant is found to be a "minimal participant." Buenrostro also asked the district judge to depart downward from the sentencing range on the ground that Buenrostro thought the heroin was marijuana. The district judge declined to make the proposed adjustment and departure.

II

A reviewing court will uphold a sentence unless the sentence was "imposed in violation of law," or was "imposed as a result of an incorrect application of the sentencing guidelines," or was "outside the range of the applicable sentencing guideline, and is unreasonable." 18 U.S.C. §§ 3742(d) and

(e). The reviewing court "shall accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(d).

This court's recent decision in *United States v. Mejia–Orosco*, 867 F.2d 216 (5th Cir.1989), controls our review of a defendant's appeal from a sentence imposed under the sentencing guidelines. The *Mejia–Orosco* court stressed that the "district court's fact-finding power is an important guarantor of the practical judgment essential to any just sentencing procedure." 867 F.2d at 219. We recognized that the sentencing guidelines necessarily call upon the district courts to make sophisticated factual determinations which "depend upon an assessment of the broad context of the crime." We specifically noted that the defendant's status as a "minimal participant" or a "minor participant" was among these sophisticated factual determinations, and that these findings "enjoy the protection of the 'clearly erroneous' standard." 867 F.2d at 221. Although we encouraged judges to supply more specific factual findings, we held that a simple statement that the defendant was not a "minor participant" would suffice as a factual finding. We declined to require the judge to write out more specific findings. 867 F.2d at 221.

The *Mejia–Orosco* court also clarified the difference between the standard of review applicable to "adjustments" and "departures" under the guidelines. Citing 18 U.S.C. § 3553, we said that we will "affirm sentences imposed by district judges who make factual findings that are not clearly erroneous, and who apply the guidelines to those findings. In such cases, the sentencing judge need not offer further reasons justifying the sentence. When, however, the judge departs from the guideline range, an additional reasonableness requirement applies: the judge must offer reasons explaining why the departure is justified in terms of the policies underlying the sentencing guidelines." *Mejia–Orosco*, 867 F.2d at 221.

## III

■ Buenrostro's first argument turns upon § 3B1.2 of the guidelines, titled "Mitigating Role." The guideline states:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

Buenrostro places great emphasis upon the second application note accompanying the guideline. That note first observes that the "minimal participant" adjustment should be used infrequently. It goes on to state that the adjustment "would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs." Buenrostro contends that he is the sort of one-time courier mentioned in the last phrase of the application note.

At the sentencing hearing, Buenrostro contended that he had agreed to carry a controlled substance in his car after being asked to do so by some men he had just met at a bar. Buenrostro said the men told him that he would be carrying marijuana. He said that he did not observe the men when they put the drugs into his car. Buenrostro also contended that he had agreed to carry the drugs into the United States only because he had recently lost his house in Houston and was living on food stamps.

The district judge denied Buenrostro's request for a downward adjustment based upon minimal participant status. The judge specifically found that Buenrostro had "committed ... a very significant crime." The district judge found that the defendant was a courier. He also stated that the fact that the defendant was carry-

ing a large quantity of drugs, and that the drug in question was a narcotic, made a finding of minimal participant status inappropriate. The judge commented, "while a typical courier is not sophisticated in the ways of acquisition and distribution, their activity and their own conduct, together with their own intent to bring the narcotics into the United States and get them past that last roadblock is an important, critical event in the trafficking of narcotics. And, therefore, it is not minor. It is not minimal." Later, while discussing Buenrostro's argument for a downward departure, the judge commented that he was "more persuaded by what [Buenrostro] had [in his possession] than by what he says he thought he had."

We hold that the record supports the district judge's factual finding that Buenrostro was neither a minimal nor a minor participant in his crime. Buenrostro was apprehended with a large quantity of heroin. As the district judge recognized, Buenrostro's crime was a serious one with serious consequences for the public. The trial judge, moreover, is not bound to accept a defendant's own declarations, made with the purpose of reducing his sentence, about the circumstances of his crime.

■ Insofar as Buenrostro contends that minimal participant status may be inferred, as a matter of law, from courier status, *Mejia–Orosco* bars his argument. Minimal participant status is not a legal conclusion derived by applying the guidelines to factual determinations. It, like "manager" status within the meaning of § 3B1.1, is itself a factual determination. As we recognized in *Mejia–Orosco*, minimal participant status is a complex fact requiring the trial judge to take into account the broad context of the defendant's crime. But, as we stated in *Mejia–Orosco*, "a complex fact is no less of a fact." 867 F.2d at 221.

Moreover, even were *Mejia–Orosco* not in place, we could not accept Buenrostro's argument. The example Buenrostro relies upon is part of an application note *restricting* use of the minimal participant adjustment. The example suggests that some couriers may appropriately receive the re-

duction; it does not suggest that all couriers are entitled to a downward adjustment. As the district judge in this case clearly recognized, couriers are an indispensable part of drug dealing networks. Without somebody to take the drugs across the border, the drugs will never reach their illicit market. In addition, the mere fact that a defendant was apprehended while acting as a courier does not imply that the defendant is *only* a courier. The district judge need not accept the defendant's self-serving account of his role in the drug organization. Finally, even if the defendant were purely a courier having no knowledge of the other aspects of the drug-dealing operation, the defendant might nonetheless be a highly culpable participant in the operation. A courier who willingly undertakes illegal transit without asking many questions is especially valuable to a criminal organization. When police apprehended a studiously ignorant courier, the organization can rest comfortably, knowing that its other operations remain hidden from the law.

If the Sentencing Commission wished to establish a special downward adjustment for all drug couriers, it could easily have done so. It could have included courier status as a specific offense characteristic in § 2D1.1, the guideline setting the base offense level for drug traffickers. The Commission could have done so, but it did not.

In the end, Buenrostro's argument fails because § 3B1.2 turns upon culpability, not courier status. The background note to the section states that the section "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him *substantially less culpable* than the average participant." Buenrostro may be a courier without being substantially less culpable than the average participant. Culpability is a determination requiring sensitivity to a variety of factors. In this case, the district court found that Buenrostro's culpability was comparable to that of the average participant. That finding is not clearly erroneous, and we will not disturb it.

## IV

Buenrostro sought a downward departure from the guideline sentence on the ground that he did not know that the controlled substance in his car was heroin. He told the district court that he thought the substance was marijuana. He also argued to the court that such mistakes were not adequately taken into account by the guidelines, and so were grounds for a downward departure.

As already noted, we will uphold a sentence unless it is imposed in violation of law, or is imposed as a result of incorrect application of the sentencing guidelines, or is a departure from the applicable guideline range and is unreasonable. 18 U.S.C. §§ 3742(d), (e). The district court did not depart from the applicable range. Nor does denial of Buenrostro's request for a departure involve any application of the guidelines.

It follows that we will uphold a district court's refusal to depart from the guidelines unless the refusal was in violation of law. Buenrostro does not, however, suggest any law violated by the district court's refusal to depart. Indeed, the gist of Buenrostro's claim is that the district court gave him precisely the sentence required by law. A claim that the district court refused to depart from the guidelines and imposed a lawful sentence provides no ground for relief. We therefore affirm the district court's refusal to depart from the guidelines.

## V

For the reasons stated, the sentence imposed by the district court is, in all respects,

AFFIRMED.