**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Saxon Hugh HATCHETT, John Edward Soto, Rafael Soto, and Simon Soto,
Defendants–Appellants.**

**No. 90–8030.**

United States Court of Appeals,
Fifth Circuit.

Jan. 30, 1991.

Terrence W. Kirk, Joseph A. Turner, Austin, Tex., for Hatchett.

Gary E. Zausmer (Court-appointed), Brantley R. Pringle, Jr., Austin, Tex., for John Soto.

Connie Kelly, Austin, Tex. (Court-appointed), for Rafael Soto.

David Deaderick, Tulk & Deaderick, Austin, Tex., for Simon Soto.

LeRoy M. Jahn, Mark R. Stelmach, Asst. U.S. Attys., San Antonio, Tex., for U.S.

Sidney Powell, Strasburger & Price, Dallas, Tex., for amicus curiae Judge Nowlin.

Before WISDOM, KING, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

The principal issue before us is whether the defendants' socioeconomic status was a factor in sentencing. Because we can not conclude that it was not, we VACATE the defendants' sentences and REMAND.

### I.

Saxon Hatchett, John Soto, Rafael (a/k/a Ralph) Soto, and Simon Soto pleaded guilty to conspiracy to possess with intent to distribute a controlled substance(s).[1] The Government's factual bases for the pleas revealed that in April 1989, Hatchett contacted, and he and John Soto met with, an undercover officer, concerning the officer attempting to recover several thousand ecstasy tablets, *see* note 1 *supra*, that had been stolen from Hatchett's car. Hatchett offered to pay the undercover officer approximately $54,000 if he recovered the ecstasy or the equivalent in cocaine or other controlled substances which were purportedly in the possession of a Houston drug ring. Hatchett gave the undercover officer the names and telephone numbers of members of the drug organization, and agreed to provide the officer with: weapons, $4,000 as an advance, and ten tablets of ecstasy so that he could recognize the drugs. Later that day, John Soto and another individual delivered the items as promised. The officer wore a body record-

---

1. They, and others, were indicted for: conspiring to possess with intent to distribute more than 500 grams of cocaine and a quantity of 3, 4–methylenedioxy methamphetamine (ecstasy) (Count 1); attempting to possess with intent to distribute more than 500 grams of cocaine (Count 2); and attempting to possess with intent to distribute a quantity of ecstasy (Count 3), all in violation of 21 U.S.C. §§ 841(a)(1) and 846.

Additionally, Hatchett and John Soto were indicted for using and carrying a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Counts 4, 5, and 6). The defendants agreed to plead guilty to Count 1 as charged in the indictment or in a superseding information; in exchange, the Government agreed, *inter alia,* to move for dismissal of all remaining counts.

er during this meeting, and the weapons delivery was videotaped.[2]

The undercover officer, again wearing a recorder, met Hatchett on the following day; and Hatchett again discussed the theft and the proposed drug recovery. Hatchett added that he believed the Houston drug dealers had also taken his "pill press" used to compact ecstasy powder into tablets. Hatchett gave the officer an additional $2,000 and keys to a vehicle that Hatchett said the Houston drug ring had also taken.

The next day the undercover officer called Hatchett and told him that he had recovered the vehicle and seven pounds of cocaine. At the agreed exchange later that evening, the undercover officer again wore a recorder; Hatchett called Ralph Soto on his car phone to inform him that the exchange had occurred; and Hatchett identified John, Ralph, and Simon Soto as his partners in the ecstasy and cocaine business. After the exchange, Hatchett was arrested. Police officers then executed search warrants on the residences of Hatchett and John and Simon Soto. The government represented that it was prepared to introduce evidence obtained from those searches against all defendants.

The district court accepted each defendant's guilty plea and directed that presentence investigations (PSI) be prepared. Defendants objected to various portions of the PSIs; some were accepted, others rejected. We note only those relevant to this appeal.

Rafael Soto objected because his PSI did not contain an adjustment based on his "minimal" role in the offense. He contended that his role was simply "to be a short time courier for Saxon Hatchett"; that he "did not know the exact contents of the package, although he assumed it was drugs of some sort, and he never saw the package"; and that he was not paid for his involvement. He further admitted that he "had on occasion obtained small amounts of ecstasy for friends," but never played the role of drug dealer, stating that "[i]t is inaccurate to imply that this is significant

'drug dealings since 1985.'" The probation officer recommended the court not make a downward adjustment for Rafael Soto because he was "an average participant within the offense" and "[h]e knew [the] other defendants, had knowledge of their activit[i]es, and understood the structure of the enterprise."

Simon Soto objected to the criminal history category used in the PSI, arguing that the Texas deferred adjudication he was subject to at the time of the instant offense was not a prior sentence for purposes of calculating a defendant's criminal history. The probation officer recommended no revision to the category, because under U.S.S.G. § 4A1.2(f), adult diversionary dispositions are counted if they involved a judicial determination of guilt or an admission of guilt; and for all of Soto's prior offenses, that requirement was met.

Hatchett and John Soto also sought downward departures, based in part on their substantial assistance to the Government; and the Government filed motions to that effect under U.S.S.G. § 5K1.1.

Subsequently, the district court held a sentencing hearing, at which the appellants, among others, were present. At the beginning of the hearing, the court addressed an objection made by the defendants to the amount of drugs involved in the offense and ruled that each defendant's offense level would be reduced by two levels to reflect the correct amount. The district judge then sentenced each of the defendants to imprisonment as follows (and in order): Hatchett, 168 months, and a $5,000 fine; John Soto, 108 months; Rafael Soto, 84 months; and Simon Soto, 72 months. Additionally, each was sentenced to five years supervised release following completion of imprisonment and assessed a mandatory $50 special assessment.

The district court expressly denied a downward departure in sentencing Hatchett and clearly, although not expressly, denied it for John Soto. Rafael Soto argued only his earlier objection regarding

---

**2.** Additionally, the undercover officer had recorded several telephone conversations regarding the proposed meeting, the theft, and Hatchett's ecstasy distribution.

his role in the offense; i.e., he should be given a four level reduction for his minimal role in the offense, or at least a two level reduction for playing a minor role. The district court expressly denied the request, finding that Rafael Soto was an average participant. Simon Soto did not argue his objection to the PSI.

## II.

■ This court will affirm a sentence under the Guidelines "unless the sentence was 'imposed in violation of law,' or was 'imposed as a result of an incorrect application of the sentencing guidelines,' or was 'outside the range of the applicable sentencing guideline, and is unreasonable.'" *United States v. Buenrostro*, 868 F.2d 135, 136 (5th Cir.1989) (quoting 18 U.S.C. §§ 3742(d) and (e)), *cert. denied*, —— U.S. ——, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). This court will not review a district court's refusal to depart from the Guidelines, unless the refusal was in violation of the law. *E.g., United States v. Lara–Velasquez*, 919 F.2d 946, 954 n. 9 (5th Cir. 1990); *see also Buenrostro*, 868 F.2d at 139 ("A claim that the district court refused to depart from the guidelines and imposed a lawful sentence provides no ground for relief.").

## A.

The main issue on appeal, one common to each appellant, is their argument that the district court erred by considering their socioeconomic status, educational opportunities, and youth in imposing their sentences.

At sentencing, Hatchett argued for a downward departure, based in part on learning disabilities (dyslexia), diminished capacity (manic depression), his parents' divorce at an early age, problems at home, and his "very young" age when he committed the offense. In response, the district court stated:

> Mr. Hatchett, the court has reviewed the record in this case as well as the [PSI]. The court [has] also reviewed the various letters which have been forwarded to the court in your behalf and other information in the file.

> Let me say to you, Mr. Hatchett, that while I have sympathy for some of the medical problems which you have had in the past, I also am aware from reading your personal history that your intelligence level is much above average, that your background, even though you haven't had perhaps the best home life, you have had many advantages in ... your brief lifetime that ... many young people don't have. That is, material advantages or at least access to them.

> You have had the opportunity to seek and acquire an education. And sometimes, obviously, you haven't pursued that in a very energetic manner, but you've had that opportunity, and if you haven't taken advantage of it, it's not because of anything other than your own desires to do something else.

> People who have had your kind of opportunities, or at least the option of doing various things with their lives who don't exist, come out of a poverty stricken background, who have some education and whose intelligence is as high as yours is, I think, have a greater responsibility to yourself and to your community than some of the other folks I see here— probably eighty percent of them—who haven't had much of a chance in their life from the day they were born.

> And I try to impress upon the community, which is one of the reasons for sentencing, that *those folks who have had advantages and should know better and still don't conform their conduct to the law are going to be punished perhaps to a greater extent in this court than those who had some mitigating circumstances based upon a lack of options as to what they can do with their lives.*

> In addition to that Mr. Hatchett, the offense with which you are charged and [pleaded] guilty is a very serious offense in this court's view.

> It's not an offense that just affects you. It's an offense that, through your actions and activities, can enable other people, other young people who are oth-

erwise innocent of wrongdoing to get involved in the use of drugs or narcotics that can have a damaging, if not fatal, effect on the rest of their lives. And the court is of the view that in those kinds of offenses, a serious penalty must be imposed for its deterrent effect.

*Based on all those considerations,* it's the judgment of this court that the motion filed by the government for a departure is overruled and denied. . . .

(Emphasis added.)

Next, the district judge sentenced John Soto, stating that he "reiterate[d] the comments that the court just made in sentencing Mr. Hatchett to you." The district court then sentenced Rafael Soto, but made no reference to his socioeconomic status, age, or education. Simon Soto followed; and the district court stated, *inter alia:*

But all of you that I'm sentencing today related to this conspiracy are young. And that's one thing that you might be thankful for, because even though you'll spend some time incarcerated, you have a substantial amount of your life ahead of you to live.

And whether or not you spend the rest of your life on and off in penitentiaries is up to you, whether or not you finish your education and try to pay back something to the community that you took away by virtue of your irresponsibility and lack of concern for others.

Based on all those considerations then, it's the judgment of this court that you be sentenced ... for a period of 72 months. . . .

Because the sentences fall within the applicable guideline ranges, the issue is whether the sentences were imposed in violation of the law or as a result of an incorrect application of the Guidelines. *Buenrostro,* 868 F.2d at 136–37.

The Government concedes that the district court erred in sentencing Hatchett and John Soto based on its perception that the district court impermissibly considered their socioeconomic status, educational opportunities, and youth in imposing their

sentences. In its brief, the Government denied that such factors were considered in sentencing Rafael and Simon Soto. At oral argument, the government equivocated somewhat, but fell short of conceding error as to these two defendants. In any event, in light of the district court's statements quoted above, and because the defendants were sentenced *seriatim* at the same hearing, and the challenged considerations—socioeconomic status, age, youth—are essentially the same for each, we can not distinguish among them.[3]

In response to the Government conceding error in its brief, and because the resolution of this issue has "far-reaching consequences for judges and defendants," the district judge filed an order supplementing the sentencing record, *United States v. Hatchett,* 741 F.Supp. 622 (W.D.Tex.1990), and requested, and was granted, *amicus curiae* status on appeal. Amicus counsel contends that the district court did not err in sentencing. Rather, it is argued, the contested statements viewed in context demonstrate that the district judge was merely lecturing the defendants; that the district judge did nothing more than respond to defense counsel's remarks; and that what is truly at issue here is, at least with respect to Hatchett and John Soto, an attempt to circumvent the general rule that a district court's refusal to depart from the Guidelines is not appealable.

■ Although there is merit to the above arguments, it is clear that the enabling legislation and the Guidelines do not permit consideration of a defendant's socioeconomic status in sentencing. For example, 28 U.S.C. § 994(d) states:

The Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders.

And, Chapter 5, Part H, of the Guidelines lists ten specific offender characteristics and describes whether, and to what extent, each characteristic may be considered for purposes of sentencing. That part concludes with § 5H1.10, entitled "Race, Sex,

---

**3.** Indeed the Sotos are all brothers, raised in the same home.

National Origin, Creed, Religion, and Socio–Economic Status," which states: "These factors are not relevant in the determination of a sentence."[4]

Moreover, this court has held that under the Guidelines "[a] defendant's socio-economic status is never relevant to sentencing ... [and] [e]ducation is relevant only if the defendant misused special training in perpetuating his crime." *United States v. Burch*, 873 F.2d 765, 769 (5th Cir.1989). In *Burch*, this court stated that the district court "apparently reasoned that an individual who possessed ample ability and opportunity to pursue an education and career yet chose to commit criminal acts should be dealt with more harshly than a criminal who had been denied such advantages. The guidelines do not permit such distinctions." *Id.* at 768.

Amicus contends that *Burch* applies only to an upward departure and argues that the district judge's statements were similar to those made in *United States v. Warters*, 885 F.2d 1266 (5th Cir.1989), discussed *infra*. Additionally, we note another recent decision from this circuit, decided after argument in this case, where we distinguished *Burch—Lara–Velasquez*, 919 F.2d at 954–56.

In *Lara–Velasquez*, the district judge determined that the guidelines prohibited consideration of the defendant's potential for rehabilitation in determining an appropriate sentence within the Guidelines. 919 F.2d at 949. The defendant had argued that he should receive the minimum sentence provided for in his guideline range because of his potential for rehabilitation and offered his continuing school attendance as evidence of that potential. *Id.* On appeal, this court reaffirmed the "fundamental premise that sentences should be 'based upon the crime committed, not the offender.'" *Id.* at 954. (quoting *United States v. Mejia–Orosco*, 867 F.2d 216, 218 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989)). However, the court concluded that the Guidelines do permit district courts

> to examine every *permissible* factor—both enhancing and mitigating—that might affect a particular term of punishment. "The sentencing judge has an obligation to consider *all* the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case." ...

Not every relevant factor is a *permissible* factor on which a district court may base a departure from an applicable Guideline range. In *United States v. Burch*, for example, this Court determined that nothing in the Sentencing Guidelines justified departure from the applicable Guideline range on the basis that the defendant is a "gifted, talented individual." Similarly, in *United States v. Reed*, [882 F.2d 147 (5th Cir.1989) ], we determined that nothing in the Sentencing Guidelines justified departure from the applicable Guideline range on the basis that "there [was] something good in [the defendant]." In each case, we relied upon *Mejia–Orosco's* explanation of the policy rationales of the Guidelines to conclude that certain individual characteristics of a criminal defendant would not

---

4. *Amicus* contends that the relevant statutes and guideline sections are in conflict and points to 18 U.S.C. § 3661 as an example. It provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an *appropriate* sentence.

(Emphasis added.) *See also* U.S.S.G. § 1B1.4 and commentary (no limits on considerations in sentencing *"unless otherwise prohibited by law"*) (emphasis added). We do not find these provisions in conflict.

The Guidelines' enabling legislation is found in 28 U.S.C. § 991 *et seq.* Section 994(d) sets forth certain characteristics of a defendant that the Sentencing Commission could consider, if relevant, in establishing appropriate sentencing classifications. As quoted above, the last sentence of subsection (d) specifically directs that "[t]he Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders."

The Guidelines and the statutes are unambiguous—a defendant's socioeconomic status can not be considered in sentencing; to do otherwise is to impose an inappropriate sentence—that is, one in violation of the law.

support a downward departure in the defendant's sentence.

*Lara–Velasquez*, 919 F.2d at 955 (citations omitted) (emphasis by the court). Accordingly, this court concluded that *Burch* and *Reed* limit a court's authority to justify a downward departure on a defendant's "admirable character traits," but found that neither *Burch* nor *Reed* "have specific application in cases involving the district court's authority to assess a defendant's sentence *within* the applicable Guideline range." *Id.* at 955 (emphasis by the court). We held that

> [b]ecause the determination of a sentence *within* the Guideline range does not require deviation from the Guidelines, the information a district court may consider in assessing sentence is necessarily quite broad: the court may consider any relevant information that the Sentencing Guidelines **do not expressly exclude from consideration.**

*Id.* (emphasis in bold added). The *Lara–Velasquez* court then noted that the Guidelines expressly exclude several factors from consideration in sentencing, including socioeconomic status and the physical condition of the defendant. *Id.* at 955 n. 11. And, the court noted that other factors, such as a defendant's emotional condition and educational skills, can not be considered as a basis for departure, but may be considered in determining where in "a Guideline range a sentence should fall." *Id.*

In *United States v. Warters*, the defendant argued that the district court improperly considered his age and economic status in departing upward from the Guideline range. This court determined Warters' argument was without merit, because it was clear that the district court had not considered those factors in determining Warters' sentence, but was instead expressing "bemusement at Warters' involvement" in the conspiracy. 885 F.2d at 1275 n. 8.

 Regrettably, we can not make *Warters* or *Lara–Velasquez* distinctions here. The district judge's statements at sentencing include both permissible and impermissible considerations, and those statements

are too interrelated to characterize some as actual considerations in sentencing and others as mere observations. Accordingly, we must vacate the sentences and remand for resentencing.

### B.

Rafael Soto raises three additional challenges; Simon Soto, one. Only one issue concerns the validity of the plea, as opposed to the sentence. We address that first. And, because the other three issues may arise on resentencing, we address them as well.

### 1.

 Rafael Soto contends that the district court did not inform him at the plea hearing of the maximum possible period of supervised release; and, therefore, his plea should be vacated. The court informed Rafael Soto twice that "the maximum possible penalty under Count 1 ... is twenty years of imprisonment and/or a fine of one million dollars," and that "[i]n addition, you'll be assessed a term of supervised release of *at least* three years." (Emphasis added.) As stated, Rafael Soto received a sentence of 84 months imprisonment, followed by a five-year term of supervised release.

Rule 11(c)(1) of the Federal Rules of Criminal Procedure requires the court to inform a defendant of "the maximum possible penalty provided by law, including the effect of any ... supervised release term." However, that same rule provides that "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed.R.Crim.P. 11(h). The error in issue did not affect substantial rights.

The district court informed Rafael Soto that at a *minimum* his term of supervised release would be three years—he was given five. As stated, the district court is required to inform the defendant of the minimum and maximum terms of both imprisonment and supervised release. And, failure to do so may result in this court vacating a guilty plea or remanding the case with instructions to either vacate the

plea or reduce the term of supervised release to reflect what the defendant purports to have understood. *E.g., United States v. Andrews,* 918 F.2d 1156, 1160–61 (5th Cir.1990). Nevertheless, we find the error harmless here; it is unreasonable to believe that Rafael Soto would not have pleaded guilty had he been advised of the maximum period for supervised release. *See, e.g., United States v. Reyes–Ruiz,* 868 F.2d 698, 703–704 (5th Cir.1989).

### 2.

■ Rafael Soto contends next that he was a minimal, or at least a minor, participant in the offense and that the district court erred in not reducing his offense level under Guidelines § 3B1.2. Whether a defendant is a "minimal" or "minor" participant are among the "sophisticated factual determinations" a district court makes which "depend upon an assessment of the broad context of the crime." Accordingly, such findings "enjoy the protection of the 'clearly erroneous' standard." *United States v. Mejia–Orosco,* 867 F.2d at 221. *See also Buenrostro,* 868 F.2d at 137.

The district court found that Rafael Soto was not a minor or minimal participant; rather, he was "aware of the scope and structure of the enterprise and of the activities of [the] others and [was] an average participant." This finding is not clearly erroneous.

### 3.

■ Rafael Soto argues also that the district court erred in considering any amount of cocaine in calculating his base offense level. He pleaded guilty to an offense concerning only ecstasy. Because he failed to raise this issue in his objections to the PSI and at the sentencing hearing, we review it only for plain error.[5] *E.g., United States v. Cockerham,* 919 F.2d 286, 288 (5th Cir.1990) ("Issues raised for the first time on appeal 'are not reviewable ... un-

less they involve purely legal questions and failure to consider them would result in manifest injustice.'"); *United States v. Mourning,* 914 F.2d 699, 704 (5th Cir.1990) ("In a plea bargain case, this court will not review challenges to the factual basis of a guideline's applicability which has not been preserved by objection in the district court.") The Guidelines provide that a defendant is accountable for "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3, comment. (n. 1). There is no plain error.

### 4.

■ Simon Soto challenges the calculation of his criminal history category. Specifically, he challenges a two point increase as a result of his committing the instant offense while under a criminal justice sentence. As discussed *supra,* he argues that his Texas deferred adjudication probation is not a criminal justice sentence under the Guidelines. As stated, he objected to this in response to the PSI; and the written addendum to the PSI noted this objection, but reaffirmed the calculation and explained how it had been reached. Simon did not urge his objection at sentencing; in fact, he represented that he did not have anything to say about the PSI. Accordingly, we review this issue for plain error.

Pursuant to U.S.S.G. § 4A1.1(d), two points are added to a defendant's criminal history score "if the defendant committed the instant offense while under any criminal justice sentence, including probation...." A criminal justice sentence is defined as "a sentence countable under § 4A1.2." *Id.,* comment. (n. 4). In *United States v. Giraldo–Lara,* 919 F.2d 19, 23 (5th Cir.1990), this court held a Texas "'deferred adjudication probation' could proper-

---

5. Rafael Soto objected to the quantity of ecstasy used in the PSI; and, as stated, the district court at sentencing reduced his offense level accordingly and reviewed his new offense level and the resulting Guideline range prior to imposing sentence. As stated, he did not object to, or

mention, the cocaine in either his objections to the PSI or at sentencing. Nevertheless, he contends that his failure to object is justified because he was confused as to whether he had received the proper reduction.

ly be counted as a 'prior sentence'" under § 4A1.2(f). There is no plain error.

### III.

The defendants' convictions are affirmed; but because we can not conclude that the defendants' socioeconomic status was not a factor in sentencing, we VACATE their sentences and REMAND for resentencing consistent with this opinion.