**UNITED STATES of America**

*v.*

**Saxon Hugh HATCHETT, John Edward Soto, Rafael Soto, Simon Soto.**

**Crim. No. A–89–CR–81.**

United States District Court,
W.D. Texas,
Austin Division.

June 20, 1991.

As Amended July 29, 1991.

Mark Marshall, U.S. Atty.'s Office, Austin, Tex., for plaintiff U.S.

Bill Willms, Small, Craig & Werkenthin, Austin, Tex., for defendant Saxon Hugh Hatchett.

Gary Zausmer, Bankston, Wright & Greenhill, Austin, Tex., for defendant John Edward Soto.

Connie Kelley, Austin, Tex., for defendant Rafael Soto.

David Deaderick, Tulk & Deaderick, Austin, Tex., for defendant Simon Soto.

### ORDER

NOWLIN, District Judge.

On May 29, 1991 all defendants in this cause came on for resentencing in light of

the Fifth Circuit's opinion, 923 F.2d 369, issued as mandate February 21, 1991. While this Court's calculation of the various sentencing guideline ranges and rulings on objections to the presentence investigation report were in all things affirmed as to each defendant, the Circuit remanded this cause for resentencing finding this Court *may* have impermissibly taken socioeconomic considerations into account in determining where these defendants should be sentenced within their respective guideline ranges. In so doing, the appellate court held that sentencing courts are unconditionally forbidden from considering socioeconomic factors when sentencing an individual defendant under the guidelines.

In the nine years since the undersigned has been acting as the presiding judge for the Austin Division of this judicial district, nothing has been more profoundly difficult than imposing sentence on people convicted of criminal offenses. One would think that after conducting more than a thousand sentencing hearings, an individual judge would be able to ignore the individual defendant and consider only the offense charged in determining the term of imprisonment or other penalty to be imposed. In its own wisdom, Congress presumed that such judicial indifference could be standardized by passing the sentencing guidelines—guidelines that are premised, in part, on the proposition that federal courts should sentence offenses not offenders, imploring the sentencing judge to look at a criminal defendant, not as an individual, but as a person who has been convicted of a specific offense, justifying the sentence to be imposed by looking almost exclusively to that offense.

Ironically, it is the experience of this judge after having determined the fate of countless criminal defendants that what often makes this task of sentencing both bearable and meaningful is remaining mindful that it is not an incarnate offense that stands before this Court at sentencing but a fellow citizen. Before the Guidelines, this Court could express its concern for such a person by lecturing that individual defendant in the hope that it might spark rehabilitation, as well as remind the community as a whole that criminal activity is destructive and can ruin lives. This might not seem like much, a few offhand remarks from the bench, but this ability to infuse some human quality into the sentencing procedure has surely some good, and at the least has afforded this judge the peace of mind to remain positive in his handling of this Court's relentless criminal docket. After adoption of the Sentencing Guidelines, this Court continued to occasionally "lecture" from the bench, however, any of those comments that were deemed excluded from consideration by the Guidelines were not taken into account by the Court in imposing sentence. Rather, such discussion from the bench was offered for its philanthropic value rather than as justification for the sentence imposed. Given the Circuit's opinion in this case, however, it is now clear that sentencing must be even more depersonalized.

During the hearing held May 29, 1991, this Court expressed the forgoing sentiments to all defendants in this case. Following the instructions as mandated by the Circuit, this Court also clarified the record to show that socioeconomic considerations were not taken into account in sentencing these defendants. As stated during the hearing, any references made to a defendant's personal characteristics, including his education and the opportunities presented to him in his youth, were primarily made to assuage this Court's own dismay at the degree to which the drug culture has taken root in our society. Regardless of this Court's doubts as to the equity of the Guidelines, or its distaste for imposing sentence under them, this Court has always recognized that its paramount duty is to follow the law and not its own conscience when the two conflict. In sentencing defendants under the Guidelines, this Court has sought to follow the law as it understands it, and will continue to do so. Applying these guidelines without considering *any* socioeconomic factors, and with minimal discourse from the bench, the Court finds the following re-sentences should be imposed on the defendants in this case: defendant Saxon Hatchett is re-sentenced

to the custody of the Bureau of Prisons for a period of 168 months, a fine in the amount of five thousand dollars ($5,000.00), a supervised release period of five (5) years, and a special assessment in the amount of fifty dollars ($50.00); defendant John Edward Soto is re-sentenced to the custody of the Bureau of Prisons for a term of 108 months, a period of supervised release of five (5) years, and a special assessment of fifty dollars ($50.00); defendant Rafael Soto is re-sentenced to the custody of the Bureau of Prisons for a term of 84 months, a supervised release term of five (5) years, and a special assessment of fifty dollars ($50.00); defendant Simon Soto is re-sentenced to the custody of the Bureau of Prisons for a term of 72 months, a supervised release term of five years, and a special assessment of fifty dollars ($50.00).

That these numbers ring cold without more, such is the latitude within which a Federal Court may now pronounce sentence over an individual defendant. Rendered veritably speechless, the role of the sentencing judge now appears to be one of resolving technical disputes in the presentence report compiled by the U.S. Probation Office, taking into account the considerations of the U.S. Attorney and defense counsel, but none of its own. Unless the current trend in Guidelines interpretation deviates from its present course, there surely will come a time when any discretion exercised in sentencing a defendant will rest in the hands of the U.S. Probation Office, the U.S. Attorney's Office, but not with this Court. Our federal criminal justice system, once guided by the highest principles of fairness and justice, will be nothing more than a mill, backlogged by an endless supply of criminal cases brought in the interest of obtaining a stiff penalty upon conviction, brought by the Guidelines, that will, in the end, adulterate the justice system they were so heralded to save.

IT IS SO ORDERED.