**UNITED STATES COURT OF APPEALS**
**for the Fifth Circuit**

_____

No. 92-3037
_____

United States of America,

Plaintiff-Appellee,

VERSUS

Samantha Carr, Darlene Hunter, Joseph Robinson,
and Wardell Hunter,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
(November 30, 1992)

Before KING, JOHNSON and DUHÉ, Circuit Judges

DUHÉ, Circuit Judge:

This appeal follows the appellants' conviction for conspiracy to possess cocaine with intent to distribute. Samantha Carr, Darlene Hunter, and Joseph Robinson were found guilty as charged after a jury trial. Wardell Hunter plead guilty. Defendants Carr, D. Hunter, and Robinson appeal both their convictions and their sentences. W. Hunter appeals his sentence. We affirm.

## Background

The convictions resulted from two shipments of cocaine from Wardell Hunter in San Diego, California to his co-defendants and unknown others in New Orleans, Louisiana. These packages arrived at two different New Orleans addresses, one on July 18, 1989 and

the second on July 19, 1989.  Each package contained

approximately one kilogram of cocaine.  The intended recipients

of the first package were not apprehended,[1] but a jury found that

Carr, D. Hunter, and Robinson did knowingly conspire to possess

with the intent to distribute the contents of the second package.

The second package was delivered on July 19th to Shonne

Pierce, a friend of Carr.  Appellant, Darlene Hunter was the

intended recipient of the second package.  Darlene claimed that

she believed that her brother, co-defendant Wardell Hunter, and

his wife[2] were sending her clothes.  Wardell's wife had

telephoned Darlene before the package was actually sent and told

her to expect a "surprise."  Co-appellant, Carr agreed to accept

the package because of a conflicting appointment Darlene had on

the day the package was supposed to arrive.  Because of a

scheduling conflict of her own, however, Carr then made

arrangements with another friend, Shonne Pierce, to accept the

---

[1]  The first package is important only in that it is referred to by the co-conspirators when discussing the delivery of the second package.  The connection between the first and second package was never affirmatively established, however, both packages were identically packaged and contained the same quantity of cocaine.  Apparently, because of problems delivering the first package, the parties attempted to stop the delivery of the second package.  This attempt to stop the delivery of the second package lead to the arrest and indictment of the defendants.

[2]  Wardell's wife, Pamela Singleton, also charged in the indictment, was granted a motion for judgment of acquittal at trial.

package.  Wardell Hunter was informed to express-mail the package to Pierce's address.

On July 18th, prior to the delivery of the second package, Wardell Hunter learned that the Louisiana authorities had discovered the contents of the first package.  Wardell called his sister, Darlene, to warn her not to accept the second package from the delivery person.  Although unable to warn Darlene directly, another Hunter sister, Mildred, warned Darlene that something was wrong with the second package and that the police had intercepted a prior package that was sent.  That night Carr called Pierce to convey the warning.  Pierce testified that she could hear Darlene in the background when Carr made the call.  Pierce also claimed that Carr told her during this conversation that the package contained drugs or pills, although Carr denied this.

Pierce served as a key witness for the Government.  In recounting the conversation between herself and Carr, Pierce testified that Carr had cautioned Pierce not to accept the package because a prior package mailed from California had been intercepted by the police.  During trial, Pierce claimed that Carr stated that "**[w]e** had sent another package to another guy's house . . . ."  In Pierce's grand jury testimony, however, she claimed that Carr stated that "**[t]hey** had sent another package to another guy's house . . . ."  This disputed testimony constitutes the crux of this appeal.  Pierce became alarmed after Carr's

phone call and told her mother of the incident.  Her mother called the authorities.

The next morning, DEA agents arrived at Pierce's house and waited for the package to arrive.  The package was delivered and, as expected, contained cocaine.  The DEA agents then set up surveillance and placed a tape-recording device on Pierce's phone.  Carr called Pierce three times that day.

In the first call, Pierce informed Carr that the package was delivered and that she had accepted it.  Pierce demanded that the package be removed from her house.  Carr told Pierce that Darlene Hunter would come to retrieve the package.  Ultimately, Joseph Robinson, Carr's husband, arrived at Pierce's residence and asked for the package.  Pierce refused to give it to him and told him to have Darlene come to get the package.  Darlene never came.

The authorities, however, observed Darlene park her car at a gas station across the street from Pierce's residence that afternoon and make a number of phone calls.  She also repeatedly looked in the direction of Pierce's residence.  After leaving the gas station, a DEA agent followed Darlene and observed her meeting with Joseph Robinson.  Neither Carr, Darlene, or Robinson ever took possession of the package.  These three, along with Wardell Hunter and his wife, were arrested and charged with conspiracy to distribute cocaine.

After the jury convicted the three Louisiana defendants, the district court sentenced each to 63 months in prison.  Wardell Hunter was sentenced to 115 months.

## Discussion

### I.

The three Louisiana defendants argue that their entire defense was based on whether they <u>knew</u> that there was cocaine in the package mailed to Shonne Pierce, and that they agreed to acquire the package in order to distribute these drugs. They argue that the evidence establishing their <u>mens rea</u> was at best tenuous. Therefore, they contend, that because the governments case was so weak, the district court committed reversible error by preventing the jurors from considering -- as substantive evidence -- Shonne Pierce's prior inconsistent grand jury testimony.[3]

The appellants contend that Pierce's grand jury testimony, claiming that Carr stated that "**[t]hey** sent [the first package] to another guy's house", was pivotal to the theory of their case. At trial, Pierce changed her story and testified that Carr had stated that **"we"** sent the first package of cocaine. The district court denied a proposed jury instruction that the prior inconsistent grand jury testimony could be considered as substantive evidence[4] and instead, included an instruction specifically limiting jurors to considering the testimony only for impeachment purposes. The defendants argue that this jury

---

[3] The defendants' argument that an evidentiary error was committed because the judge excluded the evidence is meritless. The judge did not exclude any evidence, nor did any party ever request an evidentiary ruling on this point.

[4] Federal Rule of Evidence 801(d)(1)(A) permits such evidence to be introduced as substantive evidence.

5

instruction was given erroneously and constitutes reversible error.[5]

In a narcotics conspiracy prosecution, the government must prove beyond a reasonable doubt: (1) that an agreement to violate the narcotics laws existed between two or more persons, (2) that each alleged conspirator knew of the conspiracy and intended to join it, and (3) that each alleged conspirator did participate in the conspiracy. United States v. Medina, 887 F.2d 528, 530 (5th Cir. 1989). Proof of any element may be by circumstantial evidence, and "'[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, . . . be sufficient to constitute conclusive proof.'" United States v. Roberts, 913 F.2d 211, 218 (5th Cir. 1990), cert. denied ---U.S. ---, 111 S.Ct. 2264 (1991) (quoting United States v. Lechuga, 888 F.2d 1472, 1476 (5th Cir. 1989)).

We disagree with appellants theory of what the government had to prove in order to convict the defendants of conspiracy. The government did not have to prove that each defendant knew that cocaine was in the package mailed to Shonne Pierce, but only that

---

[5] When reviewing whether the district court has committed an error in its jury instruction, this Court has stated, "[w]e afford the district court substantial latitude in formulating its instructions and we review a districts court's refusal to include a defendant's proposed jury instruction for abuse of discretion." United States v. Chaney, 964 F.2d 437, 444 (5th Cir. 1992). In judging whether a district court abused its discretion, the Court should "determine whether the requested instruction: (1) is a correct statement of the law; (2) was substantively given in the charge as a whole; and (3) concerns an important point in the trial the omission of which seriously impaired the defendant's ability to present a given defense effectively." Id.

they <u>knowingly</u> conspired with Wardell Hunter to distribute the cocaine contained in the second package. Appellants seem to argue that "**they** sent . . ." unequivocally translates into "**we** had no involvement at all." The defendants alleged lack of knowledge of the contents of the first package does not automatically lead to the conclusion that they did not know what was in the second package. Therefore, we conclude that regardless of whether the jury instruction was given in error, the distinction between **"we"** and **"they"** did not necessarily exculpate the defendants. As a result, any error committed by the district court was harmless.

## II.

Darlene Hunter appeals her sentence. She argues that the district court erred in denying her request for a downward departure for unusual family hardship. She contends that the court not only erred by failing to find that her case was "extraordinary" under the Guidelines, meriting an exception from the general rule, but also in stating that to depart downward in view of Hunter's status as a single parent violated U.S.S.G. § 5H1.10, p.s. The "general rule" under U.S.S.G. § 5H1.6, p.s. provides that "[f]amily ties and responsibilities . . . are not <u>ordinarily</u> relevant in determining whether a sentence should be outside the guideline range" (emphasis added). U.S.S.G. § 5H1.10, p.s. provides that race, sex, and socio-economic status are "not relevant in the determination of a sentence." Hunter asserts that the court relied on the latter provision in denying the downward departure. She contends that this constituted an error of law, since consideration

7

of a single mother's status was certainly not within the contemplation of the statute.

This Court "will not review a district court's refusal to depart from the Guidelines unless the refusal was in violation of the law." United States v. Mitchell, 964 F.2d 454, 462 (5th Cir. 1992) (quoting United States v. Hatchett, 923 F.2d 369, 373 (5th Cir. 1991)). Even if the district court erroneously relied on § 5H1.10, the court also made an independent finding that Darlene's family situation was not so extraordinary to require a departure downward under the general rule. Because the district court's refusal to make an exception from Guidelines' policy and depart downward was not a violation of the law, the sentence will not be disturbed.

### III.

Appellants Carr and Robinson argue that the district court erred by failing to adjust their sentences in view of their "minor" or "minimal" role in the offense. See U.S.S.G. § 3B1.2. They claim that the district court based its denial of their requested adjustments for their allegedly minor role in the offense, solely on the jury's guilty verdict. They contend that by deferring to the jury's verdict, the court failed to make the required factual finding as to minimal participant status. See United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir. 1989).

This Court will affirm the district court's sentence "so long as it results from a correct application of the guidelines to factual findings which are not clearly erroneous." United States

8

v. Sarasti, 869 F.2d 805, 806 (5th Cir. 1989).  "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole."  United States v. Sanders, 942 F.2d 894, 897 (5th Cir. 1991).  A defendant's status as a "minimal participant" or "minor participant" is one of several sophisticated factual determinations which "enjoy the protection of the clearly erroneous standard."  United States v. Mejia-Orosco, 867 F.2d 216, 221 (5th Cir.) cert. denied, 492 U.S. 924 (1989).

The district court made an express finding that all the Louisiana appellants "were equally culpable."  The record reflects that the district court carefully considered the law in this circuit in making its factual determination as to minimal participant status.  This fact finding is entitled to deference and will not be disturbed.

                              IV.

Wardell Hunter appeals the district court's refusal to reduce his offense level by two points under U.S.S.G. § 3E1.1 for accepting responsibility for his criminal activity.  Wardell's appeal was filed in excess of ten days after the district court's sentence was formally entered, therefore it is untimely under Federal Rule of Appellate Procedure 4(b).[6]  "A timely notice of appeal is not jurisdictional; however, in this circuit it is a prerequisite to our exercise of jurisdiction."  United States v. Winn, 948 F.2d 145, 153 (5th Cir. 1991).  Hunter has offered no

---

[6]  The sentence was formally entered on January 13, 1992. Hunter's notice of appeal was filed on February 11, 1992.

reason for his failure to file within the requisite period.  As a result, this Court declines to consider his appeal.  See United States v. Merrifield, 764 F.2d 436, 437 (5th Cir. 1982); United States v. Ugalde, 861 F.2d 802, 805 (5th Cir. 1988).  Even were we to consider it we find it without merit.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.