986 F.2d 1416
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Angelo Rogelio McNEIL, Defendant-Appellant.
 No. 92-5199.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: December 8, 1992
Decided: March 5, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Frank W. Bullock, Jr., Chief District Judge. (CR-91-226)
 Barry S. Stanback, Stanback & Stanback Attorneys, P.A., Greensboro, North Carolina; Susan Hayes, Greensboro, North Carolina, for Appellant.
 Robert H. Edmunds, Jr., United States Attorney, Douglas Cannon, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before MURNAGHAN, WILKINSON, and HAMILTON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Following a jury trial, Angelo Rogelio McNeil was convicted on one count of conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C.A. §§ 841(b)(1)(A) & 846 (West 1985 & Supp. 1992), and one count of possession with intent to distribute 954 grams of cocaine base, in violation of 21 U.S.C.A. § 841(a)(1) & (b)(1)(A) (West 1985 & Supp. 1992). The district court sentenced him to concurrent 192 month prison terms and five years of supervised release on each count. McNeil appeals, arguing that the district court erred by failing to find that he was a minimal or minor participant in the drug activity entitled to a downward adjustment of his offense level.* We find that the district court's conclusion that McNeil was not a minimal or minor participant was not clearly erroneous; consequently, we affirm.
 
 
 2
 On October 18, 1991, police officers stopped McNeil as he left a southbound train in Burlington, North Carolina. The officers identified themselves as policemen after McNeil agreed to speak with them. McNeil told the officers his name was "Tony Williams" and he showed them his train ticket stub with the name"A. Williams." He appeared nervous. He told them he had travelled from New York City on his way to Greensboro, North Carolina, but that he left the train in Burlington because his girlfriend, Pat Kinney, was going to meet him. McNeil did not know Kinney's address or what kind of car she would be driving.
 
 
 3
 When McNeil refused to allow the officers to search his bag, they asked him to wait until a drug-sniffing dog arrived to check his bag. The dog signalled that the bag contained drugs and the officers advised McNeil that he and his bag were being detained pending the issuance of a search warrant. Sergeant Dean Ward testified that McNeil told him that "[t]he bag and clothes were his, but the dope was not." After obtaining a search warrant, the police found six baggies containing crack cocaine.
 
 
 4
 At his trial, McNeil testified that on the day he was arrested in Burlington, he met a couple named Curt and Pat in New York City and they asked him to travel to Burlington, North Carolina, to transport firearms to New York. He agreed to do the job for $200 to $300, and Curt and Pat bought him a train ticket. Before he departed for North Carolina, he left his bag with Pat and Curt for ten minutes while he called his mother. He claimed that he had not known there were drugs in his bag when he got on the train, and denied telling the police that the bag and clothes were his, but the drugs were not.
 
 
 5
 McNeil also stated that he had never before been to North Carolina. However, when he was arrested, the police found a receipt in his pocket from a Greensboro, North Carolina Food Lion grocery store dated October 8, 1991, as well as another October 8, 1991 Food Lion receipt. McNeil claimed that Pat and Curt gave him the receipts.
 
 
 6
 A grand jury indicted McNeil and a co-defendant for conspiracy to possess with intent to distribute cocaine base and possession with intent to distribute cocaine base. After a jury found him guilty on both counts, McNeil filed a "Position of Defendant With Respect to Sentencing Factors," requesting the court to find that he was entitled to a downward adjustment of his sentence pursuant to United States Sentencing Commission, Guidelines Manual, § 3B1.2 (Nov. 1991). The district court declined to adjust McNeil's sentence downward, and sentenced him to 192 months in prison, five years of supervised release, and a $50 special assessment. McNeil timely appealed.
 
 
 7
 McNeil argues that he was entitled to a reduction in his offense level under U.S.S.G. § 3B1.2. Section 3B1.2 enables a court to reduce a defendant's offense level by four levels if he was a minimal participant in criminal activity, by two levels if he was a minor participant in criminal activity, or by three levels if his participation was less than "minor" but more than "minimal." A defendant must show by a preponderance of the evidence that he is entitled to the downward adjustment he seeks. United States v. Gordon, 895 F.2d 932, 935 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (U.S. 1990). On appeal, this Court will not disturb a district court's finding that a defendant was neither a minimal nor a minor participant in a criminal activity unless that finding is clearly erroneous. United States v. Daughtrey, 874 F.2d 213, 218 (4th Cir. 1989).
 
 
 8
 Application Note 1 to § 3B1.2 provides that the four level downward adjustment for a minimal participant in criminal activity
 
 
 9
 applies to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant.
 
 
 10
 McNeil argues that he was a minimal participant because he had no knowledge of any drug-related activity except for his allegedly unwitting transportation of 954 grams of cocaine base from New York to North Carolina.
 
 
 11
 A defendant seeking to reduce his sentence based on mitigating circumstances must provide some evidence of mitigation other than conclusory statements. Gordon, 895 F.2d at 936. McNeil provided no concrete evidence that he had a small role in the crack operation and his own credibility was questionable. He testified that he had not known his bag contained crack when he boarded the train. However, a police officer testified that before McNeil's bag was opened, McNeil stated that the drugs in the bag were not his. McNeil denied making this statement, but admitted that he had lied to the arresting officers about his name. He also claimed he had never been to North Carolina before the day he was arrested, but he had North Carolina grocery store receipts in his pocket dated before his arrest date. Therefore, McNeil failed to show by a preponderance of the evidence that he was a minimal participant, as described in Application Note 1, entitled to a downward adjustment of his sentence.
 
 
 12
 Application Note 2 to § 3B1.2 provides that
 
 
 13
 It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 14
 McNeil admits that the 954 grams of crack cocaine found in his possession was not a small amount, but contends that he qualifies as a minimal participant nevertheless because he was a one-time courier of crack cocaine.
 
 
 15
 The fact that McNeil was a drug courier does not necessarily mean that he is entitled to a downward adjustment of his sentence as a minimal or minor participant in illegal drug activity. The issue is his culpability, not his courier status.
 
 
 16
 "[C]ouriers are an indispensable part of drug dealing networks. Without somebody to take the drugs across the border, the drugs will never reach their illicit market. In addition, the mere fact that a defendant was apprehended while acting as a courier does not imply that the defendant is only a courier. The district judge need not accept the defendant's self-serving account of his role in the drug organization. Finally, even if the defendant were purely a courier having no knowledge of the other aspects of the drugdealing operation, the defendant might nonetheless be a highly culpable participant in the operation."
 
 
 17
 United States v. White, 875 F.2d 427, 434 (4th Cir. 1989) (quoting United States v. Buenrostro, 868 F.2d 135, 138 (5th Cir. 1989), cert. denied, 495 U.S. 923 (1990)). As stated above, McNeil's claims of ignorance concerning the drugs in his bag and lack of any other participation in the drug operation are questionable given the police testimony concerning the contents of his bag, his admittedly false statements to police about his identity, and the seeming inconsistency between McNeil's claims of never having been to North Carolina before and the dated North Carolina receipts in his pocket. McNeil failed to show by a preponderance of the evidence that he was entitled to a downward adjustment of his sentence.
 
 
 18
 The district court's failure to reduce McNeil's offense level was not clearly erroneous. Accordingly, we affirm McNeil's sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED
 
 
 *
 We grant the Government's unopposed motion to submit this case on the briefs