# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-10434
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JASON H. AGUILERA,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:14-CR-80-1

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:*

Jason Aguilera pleaded guilty of aiding and abetting possession with

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

intent to distribute one kilogram or more of heroin in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(A)(i).  The plea was conditional under Federal Rule of Criminal Procedure 11(a)(2), reserving the right to appeal the denial of Aguilera's motion to suppress.

Aguilera challenges the denial of the motion to suppress.  He contends that his prolonged detention exceeded the scope of the traffic stop and was not supported by reasonable suspicion.  When reviewing a denial of a motion to suppress, we review factual findings for clear error and the ultimate constitutionality of law enforcement's action *de novo*.  *See Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Pack*, 612 F.3d 341, 347 (5th Cir. 2010).

When Investigator Danny Dawson stopped Aguilera, Aguilera was traveling on I-40, a well-known drug-trafficking corridor, and was coming from California, where most of Dawson's thirty or more cases of seized drugs had originated that year.  Dawson observed an open box of laundry detergent and the sprinklings of detergent on the carpet of the cargo area of Aguilera's SUV.  Based on his experience, Dawson knew that detergent was used as a masking agent for the odor of drugs.  He also observed a religious shrine on the floorboard behind the driver's seat.  He had seen that type of shrine used in connection with drug trafficking.  The renter of the SUV was not present, the rental price was expensive, and, given Aguilera's stated intention of returning the SUV to Connecticut, contrary to the rental agreement, the rental price would likely become even greater.  Finally, Aguilera engaged in suspicious behavior by acting as though he was already under arrest when he was initially pulled over, exhibiting signs of nervousness and stress, and making statements that, in Dawson's experience, seemed intended to divert suspicion.  Those factors, when taken together, demonstrate that Dawson's detention of Aguilera for only

eleven seconds after the issuance of the warning citation was supported by reasonable suspicion.  *See Pack*, 612 F.3d at 361; *United States v. Fishel*, 467 F.3d 855, 856 (5th Cir. 2006); *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc).

Aguilera claims that his consent to search the SUV was involuntary because it was given after Dawson had issued the warning citation but before he returned Aguilera's driver's license.  That argument ignores all of the factors demonstrating that the consent was voluntary.  *See United States v. Solis*, 299 F.3d 420, 436 (5th Cir. 2002).  As stated in the magistrate judge's report and recommendation, Dawson was "polite throughout the encounter," and the tone of the encounter was conversational.  In addition, although Aguilera was nervous, he was cooperative and complied with each of Dawson's requests and volunteered information without being questioned.  Moreover, the record does not indicate that Aguilera's intelligence level was diminished or impaired.  Finally, given how well the drugs were hidden in the rear, driver's side door, Aguilera could have believed that no incriminating evidence would be found.

Under the totality of the circumstances, the finding of voluntary consent is not clearly erroneous.  *See United States v. Jenson*, 462 F.3d 399, 406–07 & n.9 (5th Cir. 2006); *Solis*, 299 F.3d at 436.  Because the search was obtained during a lawful detention and supported by voluntary consent, the district court did not err in denying suppression.  *See Pack*, 612 F.3d at 361; *Jenson*, 462 F.3d at 406–07 & n.9.

Aguilera also claims that his consent was not an independent act of free will.  Because the consent was not given during an illegal detention, however, we need not consider that prong of the consent inquiry.  *See United States v. Khanalizadeh*, 493 F.3d 479, 484 (5th Cir. 2007)

No. 15-10434

Aguilera challenges the district court's refusal to grant him a minor role adjustment under U.S. Sentencing Guidelines § 3B1.2(b), which provides that a defendant's offense level should be decreased by two levels if he "was a minor participant in [the] criminal activity." Whether Aguilera was a minor participant is a factual determination that is reviewed for clear error. *United States v. Villanueva*, 408 F.3d 193, 203 (5th Cir. 2005).

Aguilera's notion that he was a minor participant because all he did was drive the rental vehicle containing the drugs is unavailing. A defendant's role "turns upon culpability, not courier status." *United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir. 1989). Unlike his co-conspirator's role, Aguilera's role as the driver of the SUV containing the drugs was indispensable to the drug trafficking offense and essential to its success. *See id.* Aguilera was held responsible only for the heroin he transported, and when a sentence is based on activity in which a defendant was actually involved, Section 3B1.2 does not require a reduction in the base offense level even though the defendant's activity in a larger conspiracy may have been minor. *See United States v. Atanda*, 60 F.3d 196, 199 (5th Cir. 1995).

There is no error. The judgment is AFFIRMED.