### UNITED STATES of America, Plaintiff–Appellee Cross–Appellant,

v.

### Bernard Chris COSTALES, Defendant–Appellant Cross–Appellee.

### No. 91–8465.

United States Court of Appeals, Eleventh Circuit.

Oct. 5, 1993.

Donald F. Samuel, Garland & Samuel, Atlanta, GA, for defendant-appellant.

William R. Toliver, Asst. U.S. Atty., Atlanta, GA, for plaintiff-appellee.

Before TJOFLAT, Chief Judge, BIRCH, Circuit Judge, and KAUFMAN *, Senior District Judge.

TJOFLAT, Chief Judge:

Bernard Christopher Costales was convicted on one count of receiving child pornography through the mail and sentenced to twelve months in prison. Costales appeals his conviction and the United States cross-appeals his sentence. We affirm the conviction. Because we find that the district court misapplied the Sentencing Guidelines and undermined the jury verdict in granting Costales' motion for a downward departure for playing a minor role in the offense, we vacate the sentence.

I.

A 1988 joint investigation by the United States Customs Service and the United States Postal Inspection Service revealed that the National Motion Picture Corporation (NMPC) of Miami, Florida, was engaged in the business of advertising and distributing sexually explicit material appealing to persons interested in bizarre erotica. Even though the investigation of NMPC did not reveal that the company had distributed child pornography, parts of its catalog did suggest to customers that it dealt in such material. NMPC agreed to assist the government agencies in further investigation involving the distribution of obscene materials.

Because NMPC had received letters from current customers requesting child pornography, the government agents decided to use NMPC's mailing list, consisting of the names and addresses of 5700 individuals who had ordered some type of pornography in the past, to begin an undercover operation directed at purchasers of child pornography.[1] Costales' name was on NMPC's mailing list.

In the fall of 1989, the Customs Service and Postal Inspection Service established an undercover business name, Ariste Internationale. NMPC mailed a new catalog to its customers that was accompanied by a flyer, prepared by a Customs agent, indicating NMPC's association with Ariste. The flyer stated that Ariste specialized in difficult-to-obtain erotica and instructed prospective customers to respond directly to Ariste at a post office box in Brussels, Belgium for more information.

Early in 1990, Costales contacted the undercover agents at the Brussels address. He requested information and prices on videos, including "Young Girls Videos." The agents mailed Costales an Ariste advertisement containing listings and short descriptions of child pornography videos being offered for sale. Costales responded with a letter stating that he wished to purchase eight named tapes, all of which had been described in the advertisement as depicting children under age fourteen engaged in sexually explicit activity; he also enclosed a credit card number for payment. The undercover agents copied the requested segments onto a videotape, marked the tape for identification, and prepared it to be sent to Costales in a controlled mail delivery.

Meanwhile, an undercover postal inspector wrote an unsolicited letter to Costales, stating that he was a distributor of hard-to-find pornographic materials and had acquired Costales' name as a potential customer. The letter was accompanied by a questionnaire, which Costales completed and returned to the undercover inspector. In his response, Costales did not check the blank requesting that his name be removed from the undercover agent's mailing list. Instead, he indicated that he was interested in receiving, inter alia, sexually explicit videos involving "Young Girls in Hard Core." Following this expression of interest in child pornography, the Government again sent Costales a list of videos for sale with clear descriptions. Costales sent a handwritten note, along with a personal check, to the undercover postal inspector stating that he wished to purchase one of the tapes described as depicting chil-

* Honorable Frank A. Kaufman, Senior U.S. District Judge for the District of Maryland, sitting by designation.

1. The investigation used the entire mailing list because, in the interests of customer confidentiality, NMPC had destroyed most of the letters it received specifically requesting child pornography.

dren ages ten to twelve engaging in sexual activities. The inspector then prepared a marked copy of the tape for delivery to Costales.

■ On May 17, 1990, the undercover agents turned the two packages containing the requested videotapes over to a postal service employee for the controlled mail delivery to Costales. After they had been informed that Costales had accepted delivery of the packages, the agents obtained a search warrant for Costales' residence and seized the tapes and mailing packages, along with the original Ariste advertisement and numerous other items. Costales was then indicted and convicted of violating child pornography laws, 18 U.S.C. § 2252 (1988), which make it a federal offense for a person knowingly to receive through the mail materials containing visual depictions of minors engaged in sexually explicit conduct. We summarily affirm the conviction.[2] *See* Fed.R.App.P. 11th Cir.R. 36–1.

The district court sentenced Costales to twelve months in prison to be followed by supervised release for a term of three years. Appellant's sentence is subject to the provisions of the Sentencing Reform Act of 1984 and the guidelines promulgated thereunder. The district court determined that the appellant's total offense level under the guidelines was 15. United States Sentencing Commission, *Guidelines Manual*, § 2G2.2 (Nov. 1, 1992). The court then granted Costales' motion for a departure from the applicable guideline range, reasoning by analogy to sec-

tion 3B1.2 which prescribes an adjustment for a mitigating role in the offense. In granting the departure, the district court relied upon *United States v. Bierley*, 922 F.2d 1061 (3d Cir.1990), which had allowed a downward departure for a sentence for receipt of child pornography where the defendant procured the material from an undercover postal inspector.

We are asked by the Government to review the district court's application of the Sentencing Guidelines in granting a downward departure by analogy to section 3B1.2.[3]

## II.

■ We have jurisdiction over the Government's appeal from Costales' sentence pursuant to 18 U.S.C. § 3742(b). *See United States v. Yesil*, 991 F.2d 1527, 1531 n. 4 (11th Cir.1992). A district court's determination of a defendant's role in an offense is a finding of fact that we will not disturb unless it is clearly erroneous. *United States v. Mieres–Borges*, 919 F.2d 652, 662–63 (11th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1633, 113 L.Ed.2d 728 (1991); *United States v. Carrillo*, 888 F.2d 117, 118 (11th Cir.1989) (per curiam). On the other hand, the issue of whether a district court has the authority to depart downward from the applicable guideline range in a particular situation is a question of law subject to our plenary review. *United States v. Scroggins*, 880 F.2d 1204, 1206 n. 5 (11th Cir.1989), *cert. denied*, 494 U.S. 1083, 110 S.Ct. 1816, 108 L.Ed.2d 946 (1990); *see also United States v. Chotas*, 913

---

2. Costales' direct challenges to his conviction do not merit extended discussion. Appellant contends that the district court erred in denying his motion to dismiss the indictment on the ground that his Fifth Amendment due process rights were violated by outrageous governmental misconduct during the course of the investigation. We find nothing in the record, however, to indicate official action that violates fundamental fairness. *See United States v. Walther*, 867 F.2d 1334, 1339 (11th Cir.), *cert. denied*, 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989). We also reject appellant's argument that the trial court abused its discretion in allowing the Government to offer statistical evidence for the purpose of rebutting his claim that he was entrapped by the government agents. Under the broad standard of relevance of the Federal Rules of Evidence, such evidence was clearly probative on the issue

of inducement by the government agents. *See* Fed.R.Evid. 401.

3. Costales suggests that the Government did not formally object to the findings and conclusions of the district court after sentence was imposed as mandated by the rule announced in *United States v. Jones*, 899 F.2d 1097 (11th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill*, 984 F.2d 1136 (11th Cir.1993) (en banc). As a practical matter, however, the purpose of the rule is simply to allow the district court the first opportunity to correct any error and to provide for a complete record on appeal. In this case, the purpose of *Jones* has been satisfied because the Government objected to the downward departure in the district court and fully stated its grounds.

F.2d 897, 901 (11th Cir.1990) (applying *de novo* review to incorrect application of downward departure guideline), *cert. denied,* — U.S. ——, 111 S.Ct. 1421, 113 L.Ed.2d 473 (1991). A "sentencing court's use of an invalid departure ground is an incorrect application of the Guidelines." *Williams v. United States,* — U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992).

### A.

■ The Sentencing Guidelines provide for adjustments to the offense level for the role the defendant played in committing the offense, based upon an examination of all relevant conduct. The mitigating role provision allows for a two or four-point decrease, respectively, in the offense level if the defendant was a "minor" or "minimal" participant in the criminal offense. U.S.S.G. § 3B1.2. As the Commission explained in the application notes, this section applies "to a defendant who plays a minimal role in concerted activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. (n. 1). The Commission goes on to state that "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* at n. 3. *See United States v. Cacho,* 951 F.2d 308 (11th Cir.1992).

■ Section 3B1.2 is clearly inapplicable in this case of its own force because there was only one "participant," as the term has been construed in the Sentencing Guidelines, in the criminal receipt of child pornography materials. First, "participation" under the aggravating and mitigating role guidelines implies criminal liability and intent, that the individual be an actual member of the plan or conspiracy. The Commission clearly contemplated that participation requires criminal culpability:

> A "participant" is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (*e.g.,* an undercover law enforcement official) is not a participant.

U.S.S.G. § 3B1.1, comment. (n. 1); *United States v. Markovic,* 911 F.2d 613, 616–17 (11th Cir.1990). Furthermore, the Commission has evinced its determination that adjustments for one's role in the offense are only appropriate where more than one person is criminally responsible for committing an offense.[4] The mitigating adjustment provision applies when "a particular defendant is less culpable than other members of the group to such a degree that a distinction should be made at sentencing between him and the other participants." *United States v. Gordon,* 895 F.2d 932, 935 (4th Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990).

In arriving at an appropriate sentence, a district court is not necessarily cabined by the precise nature of the crime for which the defendant was convicted.[5] Section 3B1 allows the sentencing judge to look to the contours of the underlying scheme itself and not merely the elements of the offense charged. *United States v. Rodriguez,* 925 F.2d 107, 111 (5th Cir.1991). Before it may find that the defendant was a minor participant in the offense, however, the court must find that the "relevant conduct" (defined in § 1B1.3(a)(1)) for which the defendant would otherwise be accountable involved more than one participant. It must also determine that

---

4. *See also United States v. Belletiere,* 971 F.2d 961, 969 (3d Cir.1992) ("The adjustments authorized for role in the offense are directed to the relative culpability of participants in group conduct."); *United States v. Phillips,* 959 F.2d 1187, 1191 (3d Cir.) ("Clearly, § 3B1.1 is intended to apply to criminal activity engaged in by more than one participant."), *cert. denied,* — U.S. ——, 113 S.Ct. 497, 121 L.Ed.2d 434 (1992); *United States v. Anderson,* 942 F.2d 606, 616 (9th Cir.1991) (explaining that "adjustments for role in the offense are only appropriate when more than one person is criminally responsible for committing the offense").

5. The United States Sentencing Commission amended the Guidelines Manual in 1990 to make it clear that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct) ... and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, Pt. B, intro. comment.

"the defendant's culpability for such conduct was relatively minor compared to that of the other participant(s)." *United States v. Caballero*, 936 F.2d 1292, 1299 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992); *see also United States v. Katora*, 981 F.2d 1398, 1405 (3d Cir.1992).

Costales was the sole participant in the crime of receipt of child pornography because only he was criminally culpable. All of the persons from whom he ordered and received the child pornography were government agents acting without any intent to violate the law. The term "participant" must necessarily be defined to encompass only those persons involved in criminal activity or all receipt crimes would be denominated concerted activity because of the involvement of innocent enablers such as mail carriers. As the district court correctly concluded, guideline 3B1.2 is not directly applicable in this case.

### B.

■ Even when an *adjustment* in a defendant's offense level is not appropriate based upon the defendant's role in the offense, some circuits have held that a *departure* may be available on that ground. The district court followed the reasoning of the Third Circuit in *United States v. Bierley*, 922 F.2d 1061 (3d Cir.1990), in reaching such a result.[6] In considering such a departure by analogy, the issue becomes whether government agents who are not actually criminally liable should be treated as if they were.

■ The Sentencing Reform Act allows a sentencing court to depart from the recommended range prescribed by the Sentencing Guidelines only in limited situations. Indeed, "[a] sentencing court may impose a sentence outside the applicable guideline only if 'the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines....' 18 U.S.C.

§ 3553(b)." *United States v. Gonzalez-Lopez*, 911 F.2d 542, 549 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2056, 114 L.Ed.2d 461 (1991); *see also* U.S.S.G. § 5K2.0, p.s. "The Commission recognizes that there may be ... cases in which a departure outside suggested levels is warranted. In its view, however, such cases will be highly infrequent." U.S.S.G. Ch. 1, Pt. A, 4(b). Once a reviewing court determines that a departure was permissible because the Commission failed to take the cited factors into account, that court must still decide whether consideration of that factor is consistent with the Guidelines and whether the departure was reasonable. 18 U.S.C. § 3742(f)(2); *United States v. Valle*, 929 F.2d 629, 631 (11th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 112 S.Ct. 401, 116 L.Ed.2d 350 (1991); *United States v. Crawford*, 883 F.2d 963, 966 (11th Cir.1989).

#### 1.

Two circuits have held that downward departures may be available by analogy to section 3B1.2 even when an adjustment under that provision is not available. Their rationale is that "in view of the limited application of the section 3B1.2 minimal participant *adjustment,* the Sentencing Commission had failed to consider adequately the role of the defendant in conduct surrounding the offense of conviction." *United States v. Valdez-Gonzalez*, 957 F.2d 643, 648 (9th Cir.1992) (citation omitted). In *Bierley*, a case involving a defendant who purchased child pornography from a government agent, the court focused on the anomalous result which would follow from a strict application of the guideline:

If the Guidelines authorize departure in "an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm," Ch. 1, Pt. A, 4(b), *a fortiori* they authorize departure in an atypical case where an adjustment would otherwise be authorized for the same conduct but, for

---

**6.** The Ninth Circuit arrived at the same conclusion in *United States v. Valdez-Gonzalez*, 957 F.2d 643, 649 (9th Cir.1992). In addition, while the Fifth Circuit in *United States v. Sellers*, 975 F.2d 149, 151 (5th Cir.1992), did not reach the question of whether this view was correct, it did note that "[s]uch a departure is ... arguably within the district court's discretion preserved by 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0."

linguistic reasons, the adjustment Guideline does not apply.... Indeed, it makes little sense to authorize departure for a defendant who procured material from a nationwide child pornography ring but not for a defendant whose supplier was an undercover postal inspector.

*Bierley,* 922 F.2d at 1068.[7] Presumably, this type of departure from the appropriate guidelines sentencing range should be rare. The commentary to section 3B1.2 says that the minor/minimal role adjustment should be used infrequently. *See United States v. Taxacher,* 902 F.2d 867, 873 (11th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991). Departure by analogy should be granted even less often.

■ The threshold issue for our inquiry is whether, in formulating the adjustment for a minor role in the offense, the Commission considered or accounted for the possibility that all of the actors in a particular criminal situation aside from the defendant would be government agents. If the Commission fully considered a factor in formulating the Guidelines, a sentencing court may not depart from the Guidelines even if it disagrees with the Commission's determinations. *United States v. Alpert,* 989 F.2d 454, 459 (11th Cir.1993); *Bierley,* 922 F.2d at 1067. In *Bierley,* the court explained that "[w]e have found no indication in the Guidelines that the Sentencing Commission has considered and rejected departure from the Guidelines when there is a close analogy to an adjustment for Role in

the Offense."[8] 922 F.2d at 1068. However, the application notes to the aggravating role guideline, the companion to the provision allowing an adjustment for a mitigating role in the offense, clearly state that an undercover law enforcement officer is not a participant within the meaning of the provision. This statement evinces a consideration of the possibility that the only other actors in a set of facts would be government agents. Indeed,

> When the Commission decided to limit Sections 3B1.1 and 3B1.2 to offenses committed by more than one criminally responsible participant, the Commission necessarily decided that no sentence adjustment should be allowed based on a defendant's role relative to other participants if none of those other participants is "criminally responsible." This limitation on the applicability of Sections 3B1.1 and 3B1.2 was not "fortuitous," ... but was necessarily the result of a deliberate choice.

*Bierley,* 922 F.2d at 1071 (Alito, J., dissenting). This case involves an increasingly common form of undercover operation in which defendants routinely deal with government agents and not other criminals in committing their offenses. In formulating the role in the offense adjustment as it did, the Commission took this situation into account and denied the provision's benefit to defendants in such cases. A sentencing court is not free to revisit the Commission's decision by granting a downward departure.[9]

---

7. Significantly, the instant case is not an atypical case of receipt of child pornography but would more likely be considered a "heartland" case than one "where conduct significantly differs from the norm."

8. The *Bierley* court appears to have been in search of a specific mention of the possibility of a departure by analogy. The *Guidelines Manual* admittedly includes no such mention. As the Ninth Circuit remarked, "Guidelines section 3B1.4, which indicates that sections 3B1.1–.3 provide the exclusive basis for *adjustments* based on 'role in the offense,' says nothing about *departures* based upon similar considerations." *Valdez–Gonzalez,* 957 F.2d at 649. The mere fact that a contingency is not discussed in the Commission's commentary does not mean, however, that the relevant factor was not taken into account.

9. In *United States v. Crawford,* 883 F.2d 963 (11th Cir.1989), we stated that "[w]e do not

believe that a sentencing judge is precluded from considering a defendant's role in the offense merely because her action did not rise to the level of an aggravating role, as defined by guideline 3B1.1." *Id.* at 966. *Crawford* involved possession of cocaine and differed significantly from the instant case because the appellant had been part of a larger conspiracy to possess and distribute illegal substances involving her husband and two others. In that context, we held that "the amount of drugs appellant and her accomplices possessed and the nature and extent of her involvement in the unlawful undertaking, considered together, demonstrated the seriousness of her offense." *Id.* Therefore, the departure in that case was appropriate not because the Commission had failed to take these factors into account but because they were "present to a degree substantially in excess of that which ordinarily is involved in the offense" of simple possession. U.S.S.G. § 5K2.0 (policy statement).

**2.**

Furthermore, the departure granted by the district court in this case was unreasonable and inconsistent with the overall intent of the Guidelines because it implicitly undermined the verdict returned by the jury. The reasoning behind the departure by analogy implies that, while others involved in the crime may not technically be participants within the meaning of the guidelines because of their status as government agents, their conduct is factually indistinguishable from that which would make a "normal" person a participant, thereby entitling the defendant to an adjustment. A necessary predicate to this conclusion is a determination that the government agents were themselves wrongdoers, the actors bearing the largest share of responsibility for the appellant's offense. A court must provide some convincing justification in order to treat a non-liable, non-defendant as a participant.

The law mitigates conduct of a defendant where the government engages in over-reaching or outrageous misconduct that "violates fundamental fairness and shocks the universal cause of justice." *Walther*, 867 F.2d at 1339 (noting that defendant must show "extreme circumstances of outrageous government conduct to establish a due process violation"). Indeed, a defendant subject to such unconstitutional activity cannot be prosecuted at all. *See United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973). Similarly, the law holds that a defendant is not subject to criminal punishment if he has been entrapped. A valid entrapment defense, generally a question for the jury, has "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988); *see also United States v. Ventura*, 936 F.2d 1228, 1230 (11th Cir.1991). Predisposition is the

principal element of the defense and "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Mathews*, 485 U.S. at 63, 108 S.Ct. at 886.[10] The difference between the two situations involves whether the prosecution goes forward at all; in both cases, however, conviction is precluded if the defendant has no criminal predisposition (as determined at the outset of the case by the court, or by the jury after the presentation of evidence if the defense is entrapment).

In this case, the court denied appellant's motion to dismiss the indictment for outrageous governmental misconduct, and the jury rejected Costales' claim of entrapment. In fact, the jury found full blown criminal intent on the part of the defendant—criminal disposition along with a corresponding lack of inducement or coercion by the government.

By granting the downward departure by analogy to section 3B1.2, the district court suggests that the Government contributed to the criminal enterprise, and that the wrongdoing in this case was not limited to the defendant. Costales could not be a "minor participant" if the court considered him to be the sole criminal participant, the only malefactor. The message of the sentence is that, while the Government's conduct was not so outrageous as to require that the indictment be dismissed, it was nevertheless wrong in some sense. If Costales was a minor participant, then the Government by definition had to be the major participant. This implication flies directly in the face of the jury finding that Costales was not entrapped, a finding which necessarily means that there was no causal relationship between the Government's involvement in the case and the defendant's commission of the crime. The jury concluded that Costales was predisposed to purchase child pornography and that he

---

10. This case differs significantly from the Supreme Court's recent child pornography entrapment case, *Jacobson v. United States*, —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), in which the Court held that the government failed to establish that the defendant was predisposed to commit the crime. Jacobson was the target of 26 months of repeated government mailings and

communications. But the Court noted that "[h]ad the agents in this case simply offered petitioner the opportunity to order child pornography through the mails, and petitioner ... had promptly availed himself of this criminal opportunity," the entrapment argument would not have even warranted a jury instruction. —— U.S. at ——, 112 S.Ct. at 1541.

made his own decisions without governmental coercion.

The effect on the public of the district court's actions in this case is to imply in sentencing that the judge had doubt as to whether the case should have gone forward at all, or alternatively, whether there was sufficient evidence for the jury to convict. By finding Costales' role in the offense to be minor in comparison with that of the Government, the court suggests reasonable doubt as to whether appellant's predisposition overrode the activity of the government agents. Where a court truly believes that the defendant was a minor participant in such a situation, it should evaluate whether a new trial is in order. But a district court cannot use the post-trial sentencing process to call the jury's verdict into question. We are confident that the Commission did not intend the Sentencing Guidelines as an instrument for undermining confidence in a jury verdict. A departure from the recommended sentencing range which has such an effect is neither reasonable nor consistent with the Guidelines.

### III.

We affirm Costales' conviction. Because we find that the district court misapplied the Sentencing Guidelines in granting Costales' motion for a downward departure, however, we vacate his sentence and remand this case to the district court for resentencing.

AFFIRMED in part; VACATED and REMANDED in part.