United States Court of Appeals,

Eleventh Circuit.

No. 94-8143.

UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,

v.

Kelsey Pierre MILLER, Defendant-Appellant, Cross-Appellee.

Jan. 2, 1996.

Appeals from the United States District Court for the Northern District of Georgia. (No. 1:93-00037-CR-5), Robert H. Hall, Judge.

Before TJOFLAT, Chief Judge, and DYER and GARTH [*], Senior Circuit Judges.

DYER, Senior Circuit Judge:

Appellant Kelsey Miller challenges his conviction for conspiracy to possess with intent to distribute cocaine base (crack) in violation of 21 U.S.C. § 846. On appeal, Miller argues his post-trial motion for judgment of acquittal should have been granted because the government failed to prove predisposition after he raised the defense of entrapment. The government cross-appeals the sentence, contending the district court erred in departing downward on the theory that Miller was trapped into supplying crack instead of powder cocaine. We affirm the conviction, but reverse the sentence.

I. BACKGROUND

At trial the government sought to prove that Miller put Elbert Frazier, a convicted felon who was acting as a confidential informant, in contact with two individuals who could supply Frazier

---

[*]Honorable Leonard I. Garth, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

with crack.  Miller's defense was that Frazier trapped him into committing the crime.[1]

In late December 1992 Frazier had many phone conversations with Miller, some recorded and some not.  The government called Frazier to testify at trial.  He said that sometime between December 21 and 23, 1992, he called Sonny Ross's pager number to arrange a drug deal.  Miller answered the page, asked what Frazier needed, and explained that "he was handling everything while Sonny was out of town."  Frazier said he ended that conversation because he really wanted to speak with Ross.  However, because Miller had asked what Frazier needed and because Frazier had met Miller once before while attempting to arrange a buy directly with Ross, Frazier decided he would try to deal with Miller.  Frazier called Miller on December 23 and asked him for a half-kilo of cocaine.  Miller said he did not have it then, but that he could make a phone call and call Frazier right back.  Miller called Frazier back that day and said he could sell him a half-kilo.  Frazier asked for a price, and Miller responded with $14,000 or $14,500.  Frazier asked if that was the best price available and Miller said it was, adding that "he wasn't making much off the deal himself."  Miller told Frazier they could do the deal "any time."  Frazier suggested that they wait until after the holidays and Miller agreed.

Frazier called Miller on December 28 to confirm the deal and ask for a better price.  Miller refused to reduce the price and iterated that he was not making much on the deal.

---

[1]The presence of an entrapment defense necessitates our review of the facts in the light most favorable to the government.  *U.S. v. Brown,* 43 F.3d 618, 622 (11th Cir.1995).

Frazier made a series of telephone calls to Miller on December 29. In the first of those calls, shortly before noon, Miller explained he had paged "Buddy" the night before, but had received no return call. Frazier said he wanted to do the deal that afternoon and Miller asked for thirty minutes. Frazier called again at 12:20 p.m. Miller said he had bad news, that "they" were "talkin' 'bout 14.5" (meaning $14,500, a high price for a half-kilo), and that they only had "soft" (meaning powder cocaine). Miller said he could call another contact, but it would take longer. Frazier asked Miller if he could "cook" (meaning convert powder to crack), and Miller said he did not know how. In response to Frazier's questions, Miller assured Frazier that he had "checked," and that it was "straight."

In the course of several phone conversations the logistics of delivering the cocaine at a local mall on the afternoon of December 29 were negotiated. During one conversation Miller said, "You can have your hand on the pistol or what not you know," and, "You see something go wrong you know you gotta do what you gotta do." The delivery fell through, however, because the supplier that Miller had arranged for Frazier to meet was not comfortable with the location when he arrived, so the supplier and Miller left the mall without further explanation to Frazier. Frazier was upset that the deal fell through, and later that day Miller put Frazier in direct contact with the supplier, who assured Frazier they would still be able to work the deal. Nevertheless, the supplier sold the half-kilo to another party.

Frazier testified he was angry that the buy did not go as

planned, but still wanted to deal with Miller. Later on December 29, Miller called Frazier to advise him that he had been calling around, but supplies were low. At Frazier's request, Miller called the original supplier back and arranged another deal, but this time for a half-kilo of crack. The delivery was successful and Miller and his alleged co-conspirators, none of whom are parties to this appeal, were arrested.

After the jury returned a guilty verdict, the defense moved for a judgment of acquittal on the ground that there was insufficient evidence to show that Miller was predisposed to engage in the charged crime. The district court denied the motion. At sentencing the court was persuaded to reduce the sentence based upon a partial entrapment theory, which reduced the offense level to 24, reduced the sentencing range to 61 to 63 months, and eliminated the minimum mandatory sentence for trafficking crack. The probation officer had recommended an offense level of 36 based on 487 grams of crack, enhanced for obstruction of justice, which would have resulted in a range of 188 to 235 months imprisonment and a minimum mandatory sentence of 120 months. Miller argued that the court should treat the 487 grams as powder rather than as crack because Miller was not predisposed to providing crack until sufficiently pressured by Frazier, the confidential informant. Miller was sentenced to 63 months imprisonment and this appeal followed.

## II. STANDARD OF REVIEW

Entrapment is generally a jury question. Therefore, entrapment as a matter of law is a sufficiency of the evidence inquiry. When an entrapment defense is rejected by the jury, our review is limited to deciding whether the evidence was

> sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction. Further, a jury's verdict cannot be overturned if any reasonable construction of the evidence would allow the jury to find the defendant guilty beyond a reasonable doubt. Review is *de novo,* but we must view all facts and make all inferences in favor of the government.

*Brown,* 43 F.3d at 622 (citations omitted).

We review the district court's exercise of authority in departing downward from the applicable guideline range as a question of law subject to plenary review. *United States v. Costales,* 5 F.3d 480, 483 (11th Cir.1993).

## III. DISCUSSION

A. *Entrapment*

Miller asserts that the government failed to prove he was predisposed to enter into a conspiracy to possess and distribute crack, and thus the district court erred in denying his motion for judgment of acquittal. "A successful entrapment defense requires two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant." *Brown,* 43 F.3d at 623 (citations omitted). Once the defendant adduces evidence showing inducement, "the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Id.* (citation omitted). The *Brown* court held "that the predisposition inquiry is a purely subjective one which asks the jury to consider the defendant's readiness and willingness to engage in the charged crime absent any contact with the government's officers or agents." *Id.* at 624. The panel refused to enumerate a list of factors to address when a defendant's predisposition is at issue because the inquiry into a defendant's

subjective state of mind prior to government inducement is necessarily a fact-intensive inquiry. *Id.* at 625. The court, however, elucidated several guiding principles gleaned from the cases, some of which are relevant here:

> Predisposition may be demonstrated simply by a defendant's ready commission of the charged crime. *Jacobson v. United States,* 503 U.S. 540, 112 S.Ct. 1535 [118 L.Ed.2d 174] (1992); [*United States v.*] *Andrews,* 765 F.2d [1491] at 1499 [(11th Cir.1985)]. A predisposition finding is also supported by evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so. [ *United States v.*] *Ventura,* 936 F.2d [1228] at 1231, 1232 [(11th Cir.1991)]. Finally, the fact-intensive nature of the entrapment defense often makes jury consideration of demeanor and credibility evidence a pivotal factor. *See Ventura,* 936 F.2d at 1230.

*Id.*

We must now examine the evidence of predisposition presented to the jury in this case. Miller testified at trial that Frazier induced him to participate in the deal. He denied asking Frazier what he needed in their initial telephone conversation. Miller claimed that after at least ten calls over a two-to-three day period, and a promise from Frazier of $2,000 to arrange the transaction, he agreed to ask Sonny Ross to find a cocaine supplier. Miller alleged that Ross called the supplier, who in turn contacted Miller. In addition to Miller's testimony, the jury had the benefit of Frazier's testimony, the most relevant portions of which are summarized above. The jury was free to afford the greater weight and credibility to Frazier's testimony, including his statement that Miller initially asked him what he needed and that Miller told him he was "handling everything" for Ross. The jury could reasonably find that ten phone calls and a two-day hesitation did not demonstrate Miller's lack of predisposition,

particularly when, after Miller decided to be involved, he arranged for a supplier in his first conversation with Sonny Ross after Frazier had contacted him. *See Brown,* 43 F.3d at 624 ("Regardless of the defendant's ability to engage in criminal acts ... the prompt commission of the crime at the first opportunity is enough to show predisposition"). Without question, the jury could reject Miller's testimony as self-serving.

The jury also heard audiotapes of conversations between Frazier and Miller, from which they could find Miller was predisposed to be involved in the drug trade. The tapes demonstrated Miller's fluency in the language of drug dealing (e.g., "hard" versus "soft" cocaine); his skill as a negotiator (e.g., refusing to reduce the price of the cocaine despite Frazier's repeated requests); his direct access to multiple sources of drugs by "calling around," including by his own admission reaching a supplier through Sonny Ross; and his ability to promptly produce a large quantity of cocaine.

In addition, there was evidence that Miller ignored at least two opportunities to back out of the transaction. The first occurred on December 29 when Miller and his supplier left the mall parking lot because they were uncomfortable with the site. Although Miller might at that time have refused further involvement with Frazier on the ground that his supplier no longer had the cocaine, Miller soon afterwards undertook to find a new supplier. The second opportunity came during a telephone conversation on December 31 when Frazier threatened to "find another route" in the context of questioning Miller on whether the second transaction

would go as planned.  Rather than allowing Frazier to go elsewhere, Miller assured him that the deal was "definite."

We hold there was ample evidence, taken as a whole and considered in the light most favorable to the government, for a reasonable jury to find Miller predisposed to conspiring to possess cocaine with an intent to distribute.

B. *Sentencing*

The government appeals on the grounds that the district court improperly departed downward by sentencing Miller for conspiring to possess powder cocaine rather than crack, which was the substance delivered and charged in the indictment, and that there was no factual basis to support the theory of partial entrapment.  We need not reach the second issue because we hold that the district court exceeded its authority in sentencing Miller based on possession of powder cocaine.

Miller claims he was trapped into supplying crack because Frazier expressed "a clear preference ... for crack cocaine thereby warranting a stiffer penalty."  For support, Miller points out that Frazier set the type and amount of drugs and then asked Miller to cook it if he could only supply powder.  Miller contends the district court did not depart from the guidelines, but acted to prevent the government, through Frazier, from manipulating the mandatory minimum statute and the sentencing guidelines to promote injustice.  At sentencing Miller's counsel argued that the jury's rejection of the entrapment defense means only that they found he was not trapped into procuring powder since the evidence showed that powder was the substance Miller and Frazier first discussed.

On appeal he argues the court could impose a lesser sentence predicated on finding that Miller was trapped into supplying crack after he had entered into a conspiracy to procure powder cocaine. We are unpersuaded by these arguments and hold that the district court unreasonably departed from the sentencing guidelines.

A sentencing court may depart from the recommended range prescribed by the guidelines only "if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " U.S.S.G. § 5K2.0. Here the district court made no such findings and a careful review of the record does not reveal any mitigating circumstances justifying downward departure. At sentencing, the court alluded to Miller's youth and lack of criminal history, which have been accounted for in the guidelines. *See* U.S.S.G. §§ 5H1.1 and 4A1.3. Miller relies on *United States v. Johnson,* 956 F.2d 894 (9th Cir.1992), to justify the departure by analogy, but the case does not support Miller's position. *Johnson* involved the possibility of a downward departure for duress, *id.* at 899-901, "under circumstances not amounting to a complete defense," which is expressly authorized by U.S.S.G. § 5K2.12. In contrast to *Johnson,* the guidelines do not authorize a downward departure for entrapment "under circumstances not amounting to a complete defense." *Cf.* U.S.S.G. § 5K2.12. Furthermore, even § 5K2.12 does not authorize departure below a statutorily required minimum sentence.

We have held that sentencing entrapment is a defunct

doctrine.[2] *See United States v. Williams,* 954 F.2d 668, 673 (11th Cir.1992) ("as a matter of law ... we reject the sentence entrapment theory"); *United States v. Markovic,* 911 F.2d 613, 616 (11th Cir.1990) ("Entrapment as a matter of law is no longer a viable defense in this Circuit."); *United States v. Struyf,* 701 F.2d 875, 877 n. 6 (11th Cir.1983) (the doctrine of entrapment as a matter of law did not survive ... *Hampton v. United States,* 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976)). The defense theory of "partial entrapment" cannot be squared with this precedent. In reaching this conclusion, we are mindful of application note 17 to U.S.S.G. § 2D1.1,[3] passed after *Williams* was decided. Miller interprets note 17 as calling*Williams* into doubt because it indicates the government should not be permitted to structure reverse sting operations so as to maximize the sentence to be imposed.[4] We need not reach this question, however, because

[2]Miller believes there exists a distinction between sentencing entrapment and manipulation but, notably, he does not explain the nature of the distinction. Miller argues that he is entitled to a lesser sentence because the government improperly manipulated the transaction to obtain a mandatory minimum sentence and to achieve a higher guideline range. We see no difference in this context between entrapment and manipulation.

[3]Application note 17 provides as follows:

> If in a reverse sting ... the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

[4]In *Williams* the appellant argued he had been subjected to sentencing entrapment based on the facts that the government allowed two codefendants to keep certain profits made from the

application note 17 is inapposite.  The government was the buyer in this case, and there are no facts to support an inference that the government manipulated the price.  Furthermore, note 17 does not undermine the holdings of *Markovic* or *Struyf,* neither of which involved the sale of narcotics at a below-market price.

Evidence showed that discussions between Frazier and Miller involved both powder and crack so the defense theory must have been that Miller lacked the predisposition to deal any drugs—powder or crack.  He could not have successfully argued at trial that he lacked only the predisposition to sell powder cocaine since the government had evidence that he arranged for a delivery of crack. The crux of Miller's argument at sentencing, therefore, was that the court should resurrect the same entrapment defense that the jury unequivocally rejected at trial.  Downward departure for dealing powder cocaine thus "implicitly undermined the verdict returned by the jury" and "flies directly in the face of the jury finding that [the defendant] was not entrapped." *See United States v. Costales,* 5 F.3d at 487.  The district court used the post-trial sentencing process to call the verdict into question, which it was without power to do.  *See id.* at 488.  Accordingly, departure from the recommended sentencing range was neither reasonable nor consistent with the guidelines.  *See id.*

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the conviction, but REVERSE and REMAND for resentencing consistent with this opinion.

---

sale of narcotics and then offered narcotics for sale to appellant at half the market price.  954 F.2d at 672.