[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12056
Non-Argument Calendar
_____

D.C. Docket No. 0:13-cr-60267-WPD-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN CAZY,
ANDRE SAINT CYR,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(July 14, 2015)

Before MARTIN, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

This criminal case began with a government-created reverse sting operation

during which Jean Cazy and Andre Saint Cyr agreed to rob a fictional cocaine stash-house.  In 2013, a confidential informant told the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) that Cazy had been involved in several drug-related robberies.  In order to investigate these allegations, an ATF agent contacted Cazy and told him that he knew where a group of Colombian drug traffickers kept their cocaine.  Cazy agreed to rob the drug traffickers and promised the agent a share of the stolen cocaine in exchange for this information.

Cazy recruited several other men, including Saint Cyr, for the job.  After a series of meetings in which Cazy, Saint Cyr, and the others discussed how to carry out the robbery, ATF agents arrested the defendants immediately before the robbery was supposed to take place.  Cazy had a loaded revolver in his pocket, and agents found four other firearms, ammunition, a silencer, a bulletproof vest, and ski-masks in Saint Cyr's car.

Following their arrests, Cazy and Saint Cyr were convicted of conspiracy to commit Hobbs Act robbery; conspiracy to possess cocaine with the intent to distribute; attempted possession of cocaine with the intent to distribute; conspiracy to use, carry, and possess a firearm in furtherance of a crime of violence and a drug trafficking crime; using, carrying, and possessing a firearm in furtherance of a crime of violence; and using, carrying, and possessing a firearm in furtherance of a drug trafficking offense.  Saint Cyr was also convicted of possessing an

2

unregistered silencer.

On appeal, Cazy and Saint Cyr argue that the reverse sting operation constituted outrageous government conduct and violated their Fifth Amendment rights, the district court erred by denying their motion for a judgment of acquittal based on entrapment, and the district court erred by denying their motion to vacate one of the two firearm possession convictions as multiplicitous because both convictions are based on the same conduct. Saint Cyr also argues that there was insufficient evidence to convict him of possessing an unregistered silencer and that the district court clearly erred at sentencing by applying a four-level role enhancement to his offense level under United States Sentencing Guidelines § 3B1.1 and a two-level obstruction of justice enhancement under § 3C1.1. We find no reversible error and affirm.

## I.

Cazy and Saint Cyr argue that the reverse sting operation constituted outrageous government conduct because the ATF played a central role in creating the criminal conspiracy. "Outrageous government conduct occurs when law enforcement obtains a conviction for conduct beyond the defendant's predisposition by employing methods that fail to comport with due process guarantees." United States v. Jayyousi, 657 F.3d 1085, 1111–12 (11th Cir. 2011) (quotation omitted). In order to prevail, appellants must show that ATF's

3

involvement in the criminal scheme was "shocking to the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." United States v. Russell, 411 U.S. 423, 432, 93 S. Ct. 1637, 1643 (1973) (internal quotation and punctuation marks omitted).

This is a high bar, and one that appellants cannot meet. Indeed, this Court has repeatedly rejected Due Process challenges to nearly identical reverse sting operations. See, e.g., United States v. Orisnord, 483 F.3d 1169, 1173–76 (11th Cir. 2007); United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998) (collecting cases). Sanchez is instructive. In that case, we explained that sting operations generally satisfy the Due Process clause because the "[g]overnment infiltration of criminal activity is a recognized and permissible means of investigation." 138 F.3d at 1413. In rejecting the defendants' outrageous conduct argument, we placed importance on the fact that the defendants had previously been suspected of participating in robberies and became involved in the scheme voluntarily and without any instigation from the government. Id. at 1413–14.

The same is true here. The ATF contacted Cazy only after receiving a tip from a confidential informant that Cazy had already been involved in drug-related robberies; Cazy and Saint Cyr agreed to the scheme voluntarily and over the repeated cautionary statements by the undercover ATF agent that the robbery would be dangerous; and perhaps most importantly, Cazy and Saint Cyr planned

4

the robbery without interference from the ATF.  On these facts, appellants have not shown that the ATF's involvement in the reverse sting was outrageous government conduct.

## II.

We next consider appellants' argument that the district court erred by denying their motion for a judgment of acquittal based on entrapment.  "A successful entrapment defense requires two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant."  United States v. Miller, 71 F.3d 813, 816 (11th Cir. 1996) (quotation omitted).  Where, as here, a jury has rejected a defendant's entrapment defense, we ask only "whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part" in the crime.  Id. at 815.  Predisposition may be shown "simply by a defendant's ready commission of the charged crime" or "evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so."  Id. at 816 (quotation omitted).

The jury in this case had sufficient evidence to find that Cazy and Saint Cyr were predisposed to participate in the criminal conspiracy.  Most notably, both Cazy and Saint Cyr were provided several opportunities to back out, but did not.  For instance, when the undercover ATF agent voiced concern about the danger involved, Cazy reassured him that the robbery would go smoothly.  And at another

5

meeting, when the agent told Cazy and Saint Cyr that they could complete the robbery at a later time, Cazy said that he was ready and Saint Cyr added that he already had the necessary weapons. Because of this evidence of predisposition, we affirm the district court's denial of appellants' motion for a judgment of acquittal based on their entrapment defenses.

## III.

Next, we address appellants' argument that the district court erred by denying their motion to vacate one of the two firearm possession convictions as multiplicitous. Specifically, Cazy and Saint Cyr argue that their convictions for using, carrying, and possessing a firearm in furtherance of a crime of violence and using, carrying, and possessing a firearm in furtherance of a drug trafficking offense violate the Double Jeopardy Clause of the Fifth Amendment because both convictions are based on precisely the same conduct—possessing firearms immediately before they were supposed to carry out the stash-house robbery.

Although we have previously recognized that the Double Jeopardy Clause may be implicated where multiple convictions are based on "the same course of conduct," United States v. Rahim, 431 F.3d 753, 758 (11th Cir. 2005) (per curiam), any claimed multiplicity does not require reversal in this case because the district court imposed concurrent sentences for the two firearm possession convictions. Thus, any error was harmless. United States v. Pacchioli, 718 F.3d 1294, 1308

(11th Cir. 2013) (stating that where a defendant was sentenced to concurrent terms of imprisonment, "any claimed multiplicity in the indictment would have been harmless error anyway").

IV.

Next, we address Saint Cyr's argument that there was insufficient evidence to convict him of possessing an unregistered silencer. "The evidence is sufficient so long as a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt." United States v. Diaz-Boyzo, 432 F.3d 1264, 1269 (11th Cir. 2005) (per curiam) (quotation omitted).

Under 26 U.S.C. § 5861(d), it is unlawful for any person to possess a silencer that is not registered to him in the National Firearms Registration and Transfer Record. See also 26 U.S.C. § 5845 (defining firearm to include silencers). The government may prove possession by showing either actual or constructive possession. United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011) (per curiam). The government can prove a defendant's constructive possession of an item by demonstrating that (1) he was aware of the item's presence, and (2) he "had the ability and intent to later exercise dominion and control" over the item. Id.

The district court did not err by denying Saint Cyr's motion for a judgment of acquittal. After Cazy and Saint Cyr were arrested, law enforcement agents

7

found the silencer in Saint Cyr's rental car, in close proximity to Saint Cyr's other belongings. Beyond that, both the undercover ATF agent and one of Saint Cyr's co-conspirators testified that Saint Cyr had previously told them that he had a silencer available for the robbery. Thus, the government presented sufficient evidence for a reasonable jury to conclude that Saint Cyr constructively possessed an unregistered silencer.

## V.

Finally, we address Saint Cyr's argument that the district court erred by applying a four-level role enhancement under USSG § 3B1.1 and a two-level obstruction of justice enhancement under § 3C1.1. We review a district court's enhancement of a defendant's offense level under both USSG § 3B1.1 and § 3C1.1 for clear error. United States v. Rendon, 354 F.3d 1320, 1331 (11th Cir. 2003); United States v. Singh, 291 F.3d 756, 763 (11th Cir. 2002).

The Sentencing Guidelines require a four-level enhancement if a defendant "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(a). "The factors that a sentencing court considers in determining if this enhancement applies are: (1) exercise of decision-making authority, (2) nature of participation in the commission of the offense, (3) recruitment of accomplices, (4) claimed right to a larger share of the fruits of the crime, (5) degree of participation in planning or

8

organizing the offense, (6) nature and scope of the illegal activity, and (7) degree of control and authority exercised over others." Rendon, 354 F.3d at 1331–32 (quotation marks omitted).

The district court did not clearly err by applying a four-level role enhancement. Saint Cyr exercised decision-making authority and controlled other members of the conspiracy by assigning his co-conspirators to various roles in the robbery. He also recruited another individual and participated extensively in planning the offense. Thus, the district court did not clearly err in finding that Saint Cyr was an organizer or leader of the criminal conspiracy.

Neither did the district court clearly err by applying a two-level enhancement for willfully obstructing or impeding the administration of justice. See USSG § 3C1.1. Specifically, it found that Saint Cyr committed perjury when he testified that he did not know about the silencer that was found in his car. This conclusion is supported by the testimony of the undercover ATF agent and one of Saint Cyr's co-conspirators, both of whom testified that Saint Cyr planned to use a silencer during the robbery. Because we must "defer to the district court's credibility finding[s]," Singh, 291 F.3d at 763–64, Saint Cyr cannot show clear error.

VI.

9

For the foregoing reasons, Cazy's and Saint Cyr's convictions and Saint Cyr's sentence are **AFFIRMED.**